S. H. PEYTON, O. L. Peyton, Gladys Mathis, L. W. Shaw, Gordon Shaw, Lonzo Shaw, Vivian Crazen, Arthur Toles and Robert Toles, Plaintiffs in Error,

v.

Lucy Juanita McCASLIN, Ray McCaslin and Hazel Farrow, Defendants in Error.

No. 40743.

Supreme Court of Oklahoma.

Jan. 11, 1966.

Rehearing Denied May 24, 1966.

Second Petition for Rehearing Denied July 12, 1966.

318

D. O. Cubbage, Cushing, Robert B. Park, Chickasha, for plaintiffs in error.

McElroy & Vaughn, Chickasha, for defendants in error.

PER CURIAM.

This appeal is prosecuted upon the original record under authority of 12 O.S.1951, Sec. 956.1 et seq., said record consisting of all pleadings, the transcribed testimony of one defendant who testified as a witness for appellants, and a copy of the discovery depositions of the three defendants, introduced in evidence at the trial as an Exhibit.

The multiple plaintiffs were the nephews and nieces, and sole surviving heirs at law, of J. H. Peyton, who died in November, 1961, at the age of 87. He had never married. About five years before his death he made a will which would have divided his estate between his nephews and nieces. One of the nephews predeceased him before this action arose. The defendants Lucy Juanita McCaslin and Hazel Farrow were two of the surviving eleven heirs. The defendant Ray McCaslin was the husband of Lucy Juanita McCaslin.

In the spring of 1959, Mr. Peyton took up residence at a rest home in Chickasha, Oklahoma. Prior thereto he had liquidated his property and deposited about $20,000.00 in two Chickasha banks, half in the First National Bank and half in the Oklahoma National Bank & Trust Company. In June, 1959, a little more than two months after entering the rest home, Mr. Peyton met the defendant Ray McCaslin, the husband of one of his many nieces, at the banks where his money was on deposit and established joint tenancies, on signature cards, between himself and the said Ray McCaslin. The will was produced at one of the banks at the time, apparently from a safety deposit box, and destroyed by Mr. Peyton, except for the part which contained the listed names and addresses of the nephews and nieces. This list the defendant Ray McCaslin delivered to his wife, Lucy Juanita McCaslin, "for use in notifying them of his (Mr. Peyton's) death".

After the will was destroyed, Mr. Peyton lived at the rest home, wrote checks, paid his bills, and largely managed his own affairs. Ray McCaslin drew a few checks on the joint accounts signing them "J. H. Peyton, by Ray McCaslin", to pay authorized bills for Mr. Peyton. He drew none of the money out for his own benefit, during Mr. Peyton's lifetime. Mr. Peyton died November 20, 1961. Ray McCaslin paid the funeral expenses, filed an Oklahoma Estate Tax Return and paid an inheritance tax, paid up all Mr. Peyton's bills, and transferred the balance, about $17,980.77, to his own individual bank account. Each bank acknowledged the validity of the previously executed joint tenancy appointments, and acquiesced in the transfer without protest. Ray McCaslin used $1,850.00 of the money to buy a 1962 model Chevrolet Pickup Truck. The defendants Ray McCaslin and Hazel Farrow had a meeting, and discussed the subject of the value of their services to the deceased, or what sums they were entitled to receive therefor. On January 29, 1962, about two months after Mr. Peyton's death, Ray McCaslin and Hazel Farrow addressed a letter to the plaintiffs, stating:

"Uncle John left all of his money to Ray McCaslin. After all the expenses were deducted there is $4,771.69 left to be divided eleven ways.

"Will you accept a check for $443.79. Let me know as soon as possible.

(Signed) Ray McCaslin
Amber, Oklahoma
R. 1
Mrs. Hazel Farrow
Shidler, Oklahoma
Box 142."

The defendant Ray McCaslin withdrew the money from the bank and concealed it, when it appeared that the letter offer would not be accepted by some of the plaintiffs. Defendant testified that after withdrawing the money from the bank it was buried in a fruit jar and lost or he forgot where it was buried. He held fast to such version while under oath at the trial.

Plaintiffs' action was in the nature of seeking an accounting, and for a declaration of trust. The defendants denied any trust, alleged that no conditions or restrictions were placed on the joint tenancy by the deceased, and contended that the value and expenses of services performed for deceased during his lifetime was equal the amount involved.

The case was tried to the court with a jury. The jury was told in the instructions that it was sitting in an advisory capacity only, and that its duty was to "answer two questions". The jury was instructed on the essentials of a valid joint tenancy, a constructive trust was defined, and three verdicts were submitted. One was a general verdict for the plaintiff. One was a general verdict for the defendant. Another was a special verdict which authorized a finding for the plaintiff, and allowed the jury's assessment of a proper amount to the defendants for the value of their services to the deceased. A verdict was returned finding "for the defendant, Ray McCaslin, and fix(ed) the amount of his recovery at $2,000.00 and retain ownership of the 1962 Chevrolet Pickup. The remaining money, after court costs and attorneys' fees, to be divided equally among all heirs". Considerable dispute surrounds the colloquies between the court and counsel after this verdict was returned. From the record it appears that further instructions were given, the jury deliberated again, and returned a verdict "for the defendants". A Journal Entry was filed decreeing that plaintiffs take nothing, and that the defendants be discharged without costs.

The appellants assert, basically, that the cumulative effect of the evidence was to establish a constructive trust, with only a legal interest in defendant McCaslin, and that the equitable interest in the money left by the deceased belonged to them; that the weight of the evidence supported the finding of the jury in the "special verdict", and the court's action in disregarding such verdict and entering judgment on the general verdict returned by the jury constituted

reversible error, being against the clear weight of the evidence.

■ Joint tenancies are recognized as a part of the body of the common law of this State. 60 O.S.1951, § 74; Kilgore v. Parrott, 197 Okl. 77, 168 P.2d 886. Money in a joint bank account properly and legally converted by the depositor and owner into an estate of joint tenancy, in accord with the law of statute and cases, becomes the sole and separate property of the surviving joint tenant, upon the death of the designating owner and tenant. Draughon v. Wright, 200 Okl. 198, 191 P.2d 921; Royston v. Besett, 183 Okl. 643, 83 P.2d 874; Barton et al. v. Hooker, Okl., 283 P.2d 514.

■ When the circumstances surrounding the acquisition of money by a surviving joint tenant in a joint bank account are such as to indicate that the beneficial interest in the money is not to go with the surviving joint tenant's legal title, and that a third person may have a valid beneficial interest in said money, equity will be invoked to ascertain the status of the subject of the dispute and the relative rights of the contenders therefor.

■ One who acquires legal title to property to which another has a better right will be converted into the trustee of the true owner, and compelled to convey the legal title. Teuscher v. Gragg, 136 Okl. 129, 276 P. 753, 66 A.L.R. 143. The subject of trusts and the control of trust estates is cognizable only by courts of equity. McCoy v. McCoy, 30 Okl. 379, 121 P. 176. An action for an accounting by a constructive trustee is an equitable action. Smith v. Stockyards Loan Co., 186 Okl. 152, 96 P.2d 55; Richards v. Lowery, 135 Okl. 243, 275 P. 335. In cases of purely equitable cognizance neither of the parties litigant are entitled to a jury trial, as a matter of right. Steinway et al. v. Griffith Consolidated Theatres, Inc., et al., Okl., 273 P.2d 872. A district judge, in an equity action, may call a jury and submit issues to it, under instructions. But, in such cases, the jury is acting in a purely advisory capacity, and its verdict is not binding upon the court. Gamel v. Hynds, 69 Okl. 204, 171 P. 920; Anderson v. Kelley, 57 Okl. 109, 156 P. 1167. The action of a court in rejecting an advisory jury verdict in an equity action, and entering its own judgment contrary thereto, is not error. Anderson v. Kelley, supra.

■ A presumption of correctness exists in favor of a trial court's findings, in equity cases. Richardson v. H. E. Leonhardt Lumber Co., Okl., 389 P.2d 965; Hargraves v. Wilson, Okl., 382 P.2d 736. However in such cases, if it appears from the record that the conclusions reached by the trial court are against the clear weight of the evidence, the Supreme Court has always reserved the right, and acknowledged the duty, of setting aside the judgment of the trial court and rendering such judgment as should have been rendered below. Holmes v. McKey, Okl., 383 P.2d 655; Payne v. Gilmore, Okl., 382 P.2d 140; Arthur et ux. v. Arthur, Admr. et al., Okl., 354 P.2d 199.

■ Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired without fraud, it is against equity that it should be retained by him who holds it. Powell v. Chastain, Okl., 318 P.2d 859; Rollow v. Taylor, 104 Okl. 275, 231 P. 224.

Reviewing the record and eliminating the improbable and inconsistent testimony therein so as to get a clear view of the material evidence, we are impelled to the conclusion that the "clear weight" of the evidence herein established a constructive trust. In Holmes v. McKey, supra, this Court cited McHaney v. McHaney et al., 209 Ark. 337, 190 S.W.2d 450, 162 A.L.R. 1175, and quoted with approval:

> "The rule governing the relationship of appellant and appellees is stated in the case of Walthour v. Pratt, 173 Ark. 617, 292 S.W. 1017, 1020, as follows: 'Everyone, whether designated agent, trustee, servant or whatnot, who is under contract or other legal obligation to repre-

sent or act for another in any business or line of business or for any valuable purpose must be loyal and faithful to the interest of such other in respect to such business or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of common sense and honesty as well as of law. * * *'"

 If one obtains the legal title to property by fraud or by violation of confidence or fiduciary relationship, or in any other unconscientious manner so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by imposing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner. Powell v. Chastain, supra; McCaleb v. McKinley, 80 Okl. 38, 194 P. 105.

 Although it is for the trial court in a case of equitable cognizance to determine the credibility of the witnesses and the weight and value to be given to their testimony (see Hitt v. Hitt, Okl., 258 P.2d 599), it is still incumbent upon this Court to examine and weigh the evidence. In examining the entire record we cannot accept defendant's McCaslin version, or interpretation, that Mr. Peyton was "excluding everybody" but him by creation of the joint tenancy, and that when the money "was put in my name" an outright unrestrictive gift was consummated. This is particularly true in view of earlier admissions and other circumstances which show with persuasive clarity that the joint tenant intended only a legal interest in defendant, with a duty to make division of what might be left at his death among the numerous surviving relatives. He acknowledged being asked the question, in a deposition taken July 12, 1962, "Did Mr. Peyton tell you why he was putting the account in your name?", and answering, "Well, for one thing, he said that he wanted me to see after him and divide it if there was any left." While on the witness stand he acknowledged furnishing the answer, and then denied making it.

 It likewise developed at the trial that on January 29, 1962, the defendant Hazel Farrow, and her husband Avan, came to defendant's (Ray McCaslin's) house to discuss the disposition of the Peyton money. Defendant at that time stated "He was planning to keep $8,000.00", and, while Hazel Farrow demanded that he pay her $4,000.00 of it, he "did not agree to pay it, and he did not deny it." Afterward, he offered to divide $4,771.69 of the Peyton money between the plaintiffs. He made the offer in writing, signed it, and had the defendant Hazel Farrow join in the offer and tender. The effect of this evidence may not be disregarded. There was no proof to show defendant owned, or should have owed, anything to Hazel Farrow. By contemplating her claim, or allowing it, he was considering the use of the Peyton money, and not his own, for the settlement of a claim against Mr. Peyton. Such contemplation could only have been made in his capacity as trustee. His testimony that he planned to "keep" $8,000.00 "for himself", was tantamount to a denial of ownership, or what would be the same, an admission of a delegated trust.

 We are not unmindful of the rule as stated in Brown v. Greever, Okl., 379 P.2d 689, the latest in a long and unbroken line of decisions, holding: The onus of establishing a constructive trust lies upon him who seeks its enforcement, and before a court will be warranted in making a decree therefor, the evidence must be clear, unequivocal and decisive. But each trial, like each case, must be considered in the light of its own peculiar developments and circumstances, and, accordingly, the rule must be applied intelligently. As the well-known axiom states, the preponderance of the evidence does not mean the greater number of witnesses testifying to a fact, but means that which, to the mind of the trier of the fact, or the seeker of

the truth, seems most convincing and more probably true.

 Assuming that as the benefactor of his joint tenant before his death, defendant was entitled to be paid for his benefactions, or services, and as trustee for the estate of his former joint tenant after death, he was entitled to remuneration for those services, his self-imposed charges for such services as evidenced by the offer to divide a residue between the beneficiaries were too high. The jury so found. The trial court was not bound by the jury's verdict. Neither is this reviewing Court bound thereby. But the wisdom of the verdict may be recognized and adopted here as it should have been in the trial court. The judgment which should have been entered below was the one which was recommended by the jury, acting in its advisory capacity.

Motion to dismiss this appeal was considered heretofore and denied by appropriate order. Further argument is made that, since this appeal is brought under 12 O.S.1961 § 956.1 et seq., the appeal is defective by reason of plaintiffs in error failure to present to this Court all of the evidence introduced at the trial. We are of the opinion this argument is without substantial merit, in view of the express provisions of 12 O.S.1961 §§ 956.6, 956.9, herein applicable.

The judgment of the trial court is reversed with directions to the trial court to set aside the judgment rendered and impress the Peyton funds with a constructive trust, require an accounting by the trustee (Ray McCaslin), fix the trustee's compensation in accord with the advice of the jury's special verdict and to render judgment for plaintiffs against the defendant (Ray McCaslin) for the balance found to be due.

HALLEY, C. J., JACKSON, V. C. J., and BLACKBIRD, IRWIN, BERRY, HODGES and LAVENDER, JJ., concur.

DAVISON and WILLIAMS, JJ., concur in result.

The Court acknowledges the services of HOWARD K. BERRY, who with the aid and counsel of JOHN C. ANDREWS and MART BROWN, as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to BERRY, J., for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.