**Wildo RANEY, Plaintiff in Error,**

v.

**Lawrence J. DIEHL, Executor of the Estate of Leo C. Diehl, Defendant in Error.**

**No. 42652.**

Supreme Court of Oklahoma.

March 16, 1971.

586

Van Cleave, Gresham, Liebler, Dalton & Bivens, Tulsa, for plaintiff in error.

Blackstock & Joyce, LeRoy Blackstock, J. C. Joyce, Dwayne C. Pollard, Tulsa, for defendant in error.

BERRY, Chief Justice:

This action was brought by First National Bank and Trust Company of Tulsa, Oklahoma, seeking declaratory judgment to determine ownership, as between Executor of Leo C. Diehl, deceased and Wildo Raney, of a certificate of deposit issued by plaintiff, payable at maturity to " * * * the order of Leo C. Diehl or Miss Wildo Raney * * *." The decisive issue is whether deceased created a joint tenancy with right of survivorship in this certificate.

Extended summation of pleadings, factual and evidentiary basis for issues leading to this appeal are unnecessary. Matters recited hereafter establish background and delineate the issue. Leo C. Diehl began a business career during the late 1930's with one grocery store in Barnsdall, Oklahoma. By effort and acumen his business interests multiplied many times over. Defendant Raney, a single woman, met and dated deceased in 1935, and moved to Barnsdall in 1936 after deceased opened a grocery store there. In 1943 defendant began employment in this store as clerk and cashier, and continued employment until Diehl's demise. Deceased's marriage in 1945 terminated in divorce shortly after the birth of a son. Following divorce Raney again began dating deceased, prepared meals in his home and spent nights in his home as well as her own, took trips with and cared for deceased during episodes of heavy drinking and would take him to the hospital and take care of the business while deceased was ill.

Between 1962–1965 deceased acquired stock in an Owasso bank, which was held: 1399 shares individually; 500 shares by deceased and his son (Phillip) in joint tenancy with right of survivorship; 500 shares by deceased and defendant Raney in joint tenancy with right of survivorship. Deceased also purchased 1858 shares in Owasso Building Corporation, holding 858 shares individually; 500 shares held in joint tenancy by deceased and his son; the remaining 500 shares were held in joint tenancy with defendant Raney. Raney contributed nothing to funds involved in purchase of any stock. Proceeds from sale of this stock in January 1966 provided the source of funds used to purchase two original certificates of deposit. In 1962 deceased had borrowed $30,000.00 from plaintiff. This loan, and other transactions over the years, accounted for the indebtedness due when the involved certificate was endorsed and left with plaintiff as collateral.

Deceased deposited $71,145.00 on January 5, 1966, for which plaintiff issued negotiable time deposit Certificate No. 487, plus $800.38 · interest, due April 5, 1966. This certificate was payable " * * * to the order of Leo C. Diehl or Miss Wildo Raney * * *", and was issued when deceased and Raney were present. On February 3, 1966, deceased deposited additional funds ($27,854.62) for which plaintiff issued certificate No. 613 for $28,067.-01, including interest, payable April 5, 1966, to Leo C. Diehl or Wildo Raney. On April 9, 1966, deceased pledged both certificates as collateral on a personal note signed only by deceased. Both certificates matured and on April 27, 1966, deceased deposited their proceeds for which plaintiff issued certificate No. 1096 for $105,265.06, including interest due April 27, 1967. This certificate also was issued payable to deceased "or" Wildo Raney. Leo C. Diehl died June 5, 1966.

Plaintiff bank then initiated this action for determination as to which party was entitled to proceeds of the certificate of deposit. Pleadings adequately presented claims of the respective parties, so no detailed analysis is necessary. Plaintiff alleged issuance of the certificate; lack of interest therein except as collateral security for a promissory note ($22,500.00) executed by deceased, for which claim had been filed and allowed; lack of adequate remedy at law; plaintiff should be allowed a set-off against deceased's note, together with judicial determination as to party entitled to these funds.

Plaintiff in error, defendant Raney answered admitting issuance of the certificate, but denied plaintiff's right to set-off, asserting this should be a charge against the estate, for which claim had been filed and allowed. Defendant affirmatively alleged the certificate in the form issued created a joint tenancy with right of survivorship, entitling defendant to proceeds of the certificate.

Defendant executor's request for hearing a motion requiring plaintiff to pay the proceeds upon furnishing surety bond was opposed by Raney, who asked immediate trial and adjudication of the issue upon the merits. Executor then answered admitting facts surrounding issuance of this certificate, but alleged Raney was a tenant in common with deceased, and not having contributed to funds invested was not entitled to proceeds; during his lifetime deceased endorsed and delivered the certificate as security and plaintiff was deceased's bailee; the executor succeeded to all deceased's rights and therefore was entitled to subject of bailment.

The trial court passed on preliminary matters and thereafter heard the merits of this cause concerning the issue whether Raney and deceased were joint tenants with right of survivorship or tenants in common. Raney's position was that the certificates did not have to show right of survivorship upon their face, and the parties' relationship over the years, along with deceased's expressed intention to provide for her financially, established Raney's entitlement to the entire amount. The executor's position was that use of disjunctive "or" on face of this certificate, at most would have created only a tenancy in common.

Defendant Raney's basic claim is that deceased's actions created a joint tenancy with right of survivorship in respect to this certificate. The argument urges no particular form is required to create such relationship, the controlling question being a question of intent of the parties in making the deposit, rather than the form. In support of this defendant introduced evidence of five witnesses, who had known defendant and deceased for many years, some socially and others in a business way. All the witnesses had known defendant for many years, or at least from the date defendant began employment with deceased. Without exception these witnesses testified to conversations wherein deceased discussed defendant, and indicated his intention to see defendant taken care of should anything happen to deceased.

Defendant, a single woman, testified she began dating deceased in 1935. Deceased moved to Barnsdall in 1935 and defendant moved there in 1936, but did not begin working for deceased until 1943. Employment as clerk and cashier continued until deceased's death, during which period they traveled together on business trips. Deceased's marriage in 1945 ended in divorce after birth of a son, after which defendant continued her social relationship, taking trips with deceased, as well as physically caring for defendant and his business affairs during periods deceased was ill or incapacitated from heavy drinking. Some of the Owasso bank stock was held in her name, and she was present when this stock was sold. A few days after sale defendant went to Tulsa, got deceased from the hospital, and both went to the bank where certificate No. 487 was purchased. While returning to Barnsdall, deceased told defendant should anything happen to him she should see Wagner, plaintiff's issuing of-

ficer, and this certificate would be hers, and not part of the estate.

Parenthetically, at this point we note a serious issue presented concerning admissibility of testimony from defendant, and witnesses in her behalf, as to conversations relating to deceased's intention to provide for defendant. During trial this testimony was objected to both on grounds of hearsay, and because violative of the inhibition against such testimony under 12 O.S.1961, § 384, usually denominated the "Dead Man's" statute. Because this appeal is determinable on other grounds, no purpose would be served by discussion, or expression of views concerning inadmissibility of such evidence.

The trial court made written findings of fact and conclusions of law which, so far as germane to issues here, encompassed the factual background of deceased's financial affairs and defendant's employment and assistance in business affairs. The court found the funds involved in purchase of the certificates were provided entirely by deceased, who at all times exercised control and dominion over the funds, which never were under defendant's dominion, control or possession. Upon deceased's acquisition of the certificate involved deceased only requested issuance to himself *or* defendant, and expressed no intention to create a joint tenancy with defendant. Deceased had pledged prior certificates to secure bank loans, and pledged No. 1096 as collateral security for an existing note, and also as security for other loans if required, without necessity of giving additional security.

The court concluded as a matter of law the statute, 60 O.S.1961, § 74, controlled, and the certificate drawn payable to deceased *or* defendant Raney did not create a joint tenancy with right of survivorship. Had deceased either intended, or in fact created, a joint tenancy in this certificate same was destroyed by deceased's pledge of the certificate as security for personal obligations, and a tenancy in common created. As tenants in common deceased and de-

fendant were entitled to proceeds at maturity in same proportion as contributions to funds. Having contributed nothing, defendant was not entitled to share therein and executor was entitled to entire proceeds subject to indebtedness for which pledged. Judgment entered in conformity with these findings and conclusions precipitated this appeal.

Four contentions are urged as grounds for reversal of this judgment. Crux of the appeal lies within the issue whether deceased's actions created a joint tenancy with right of survivorship in defendant in the certificate of deposit. Gist of defendant's argument urges the question of intent is the predominant factor in determining whether a joint tenancy has been created. Basis of this argument is derived from such decisions as Dyer v. Vann, Okl., 359 P.2d 1061; Hendricks v. Grant County Bank, Okl., 379 P.2d 693; City National Bank, etc. v. Conrad, Okl., 416 P.2d 942.

■ Joint tenancies were recognized at common-law, and in Oklahoma prior to statutory enactment. In re Pugh's Estate, Okl., 281 P.2d 937. In 1945 our legislature made specific provision for estates in joint tenancy with right of survivorship (other than between married persons) by enactment of our statute, now 60 O.S.1961, § 74, which states, in pertinent part:

> "A joint interest is one owned by several persons in either real or personal property in equal shares, being a joint title created by a single instrument, will or transfer when expressly declared in the instrument, will or transfer to be a joint tenancy, or as between husband and wife a tenancy by entirety or joint tenancy as the grantor may elect, or when granting or devising to executors or trustees as joint tenants. A tenancy by entirety can only be created between husband and wife.

> \*　\*　\*　\*　\*　\*

> "The provisions of this act shall apply to all estates in joint tenancy or tenancy by entirety either real or personal prop-

erty heretofore or hereafter created. * * *"

The statute did not employ the term "survivorship." In construing this statute, it was recognized joint tenancy had a well defined meaning at common law, the distinguishing characteristic being survivorship. Since the legislature neither defined the term nor used language indicating contrary intent, it was to be presumed the term was used in the technical common law sense. Draughon v. Wright, 200 Okl. 198, 191 P.2d 921.

Prior to 1945 we recognize personal property, i. e. bank accounts, could be so arranged and handled as to create a joint tenancy with right of survivorship. Royston v. Besett, 183 Okl. 643, 83 P.2d 874; Green v. Comer, 193 Okl. 133, 141 P.2d 258. In Besett the court stated the controlling question was not the form of the arrangement, but the intention of the parties. This principle has been applied in several instances, including those decisions cited by defendant.

■ Plain language of the statute, supra, provides for creation of joint tenancy estates, or interests, when created by single instrument, and *when expressly declared in the* instrument. Barton v. Hooker, Okl., 283 P.2d 514, considered the question at length under this statute authorizing creation of joint tenancy with survivorship in personal property by an owner's transfer of funds to himself and others. Barton, supra, points out with particularity that an owner's transfer of funds to herself and another, by a written instrument signed by both, creates a joint tenancy with right of survivorship by written contract. And, right, title or interest in the joint property, or proceeds thereof, are not modified by the degree of relationship since, as between joint tenants, their rights are established by the law of joint tenancy. Thus joint tenancies founded upon express, written declaration in a single instrument encompass the element of intent and leave no question as to creation of the relationship. See also Watkins v. McComber,

208 Okl. 352, 256 P.2d 158, and Urban v. Jackson, Okl., 434 P.2d 889.

■ From review of our decisions it appears we recognize two categories of joint tenancies with right of survivorship. First those falling within the statute, supra, created by written instrument expressly declaring the relationship. Barton v. Hooker, supra. Second, those not created with words of joint tenancy or survivorship, but which are determined to exist because the party initiating the relationship " * * * intentionally and intelligently created essential elements of joint ownership and survivorship." Dyer v. Vann, supra. Difficulty of determination is multiplied by cases in this second category where neither arrangement of names and wording of the instrument reflect joint tenancy with survivorship, nor subsequent handling of the account, or property, reasonably discloses the owner's reasons or intention for the action taken. The present inquiry concerns this second class.

Defendant's argument places particular reliance upon Vann, supra. There, following the owner's death joint tenancy with right of survivorship was claimed in two building and loan association certificates drawn payable to "Emmet D. Cornelius or Carol Sue Vann, a minor." One certificate had been issued in 1954 to Cornelius individually. In 1957 Cornelius visited the association and discussed his affairs with an official, mentioning his friendship with the Vann family, failure of his relatives to befriend him, and expressed desire to provide a college education for Vann's minor daughter. However, Cornelius made clear he wished to retain control of certificates and have benefit of dividends during his lifetime. The company official advised this could be accomplished by issuance of certificates in form quoted and this would be a joint account. One certificate was issued at that time. A month later the 1954 certificate was returned to the office and a transfer to Cornelius *or* the minor was endorsed on the back, face of the certificate changed to conform thereto, and

association ledger sheets changed to reflect both names. The certificates, placed in a deposit box rented at that time, were found after Cornelius died testate and the administrator brought suit to recover the certificates and money thereby represented.

A trial court judgment holding deceased had created a joint tenancy with right of survivorship was affirmed. We held the entire record left no question as to deceased's intention to create joint tenancy with right of survivorship, the essential ingredient of intent to confer right of survivorship being present.

This principle was followed in Hendricks v. Grant County Bank, supra. There evidence, relative to creation of the joint tenancy with right of survivorship in a certificate of deposit was even stronger, since based in part upon close family relationship. Mattie Hendricks visited with the banker and withdrew money from her account by check, and purchased a certificate of deposit payable to herself *or* David Hendricks, a son. This certificate was endorsed on maturity and a new certificate issued payable in the same manner. After maturity the son's wife removed this certificate from a joint tenancy deposit box, endorsed David Hendricks' name and received a new certificate drawn payable as before. This deposit box had been rented by Mattie and son David as joint tenants. Evidence showed the language of the certificate was that used regularly by the bank to indicate joint tenancy with right of survivorship, and was issued to carry out Mattie's wishes, with understanding either could cash the certificate, or the survivor receive the proceeds. The bank would have cashed the certificate upon the son's endorsement. Testimony this deposit was for use of either joint tenant if needed was corroborated by the son's sister. Other witnesses testified Mattie told them of having established the joint account.

█ Analysis of Hendricks, supra, reflects careful exposition of factors considered controlling in determining whether joint tenancy with right of survivorship was intended, where the form or wording of the instrument, or deposit, had neither the force nor effect of creating the relationship. Summarized, these factors are:

1. The owner's unqualified expression of intention to create the relationship at that time;

2. Establishment of account in the form advised by an officer of the depository after owner's inquiry concerning manner and means of accomplishment;

3. Accessibility to both parties after creation of account;

4. Creation of account so that use at discretion of either joint tenant is permissible;

5. Exercise of possessory rights by either joint tenant before survivorship vests.

In relation to the first factor there is an entire absence of evidence showing deceased's unqualified intention to create a joint tenancy with right of survivorship. It is true defendant testified to conversations wherein she was told the original certificate would be hers if anything happened to deceased. There was evidence from other witnesses concerning deceased's statements that defendant "would be taken care of." However, with one exception, there was no evidence tending to show the manner in which this was intended to be accomplished, or at what future time. Two witnesses testified to statements defendant was to be taken care of and bank stock had been purchased to accomplish this. The trial court concluded all this testimony, at best, was too remote in relation to this transaction to establish deceased's clear intent to create joint tenancy with survivorship.

In this connection, it must be noted deceased was an experienced business man with knowledge and experience in creating joint tenancy relationship. This is disclosed by individual purchases of bank stock issued to deceased and his son, and to deceased and defendant, in joint tenancy with right of survivorship. But, after pur-

chase, control and final disposition of the stock remained with deceased until sold and proceeds to provide funds for the original certificates of deposit. A necessary conclusion is that deceased knew and understood the appropriate method for creating a joint tenancy relationship. There is no evidence deceased sought or received advice from plaintiff's officer that issuance of a certificate in the form used would create the joint tenancy survivorship relationship, or that deceased made inquiry indicating a desire this was sought to be accomplished.

From the time bank stock originally purchased was sold and those proceeds transposed into the first certificate drawn payable to deceased *or* defendant, to time of deceased's death prior to maturity of the certificate involved, there is entire absence of any evidence indicating existence of any factor above enumerated. Neither by evidence nor inference is there intimation any certificates were accessible to both parties, subject to use at discretion of each, or that any possessory right was exercisable by defendant. Rather, the evidence is directly contrary. The joint tenancy created in bank stock with defendant was controlled by deceased until terminated by sale. Proceeds from that transaction were included in purchase price of the first certificate, endorsed as security for a personal obligation which continued until deceased's demise. Defendant had no exercisable possessory right in the certificate pledged to plaintiff, and which constituted a debtor and creditor relationship between plaintiff and deceased. Hendricks v. Grant County Bank, Okl., 379 P.2d 693. The certificate, encumbered by this pledge, could be released only to deceased upon discharge of the obligation.

This record has been reviewed carefully. The evidence wholly fails to establish an intelligent intention on deceased's part to create a relationship embracing the essential elements of a joint tenancy with right of survivorship. The trial court was correct in finding defendant

had no right, title, or interest in the certificate of deposit. A trial court's judgment not against clear weight of the evidence will not be disturbed on appeal. Spartan Pet. Corp. v. Curt Brown Drilling Co., Okl., 446 P.2d 808. The conclusion reached obviates need for discussion of other matters urged by the parties.

Judgment affirmed.

BERRY, C. J., and WILLIAMS, BLACKBIRD, IRWIN, HODGES, LAVENDER and McINERNEY, JJ., concur.

DAVISON, V. C. J., concurs in result.