**Sallie Mae ALEXANDER, Appellant,**

v.

**David Leon ALEXANDER, Executor of the
Estate of E. R. Alexander, et
al., Appellees.**

**No. 47675.**

Supreme Court of Oklahoma.

July 8, 1975.

Ivester, Ivester & Ivester, Sayre, for appellant.

Myers & Cummins, Hollis, for appellees.

LAVENDER, Justice:

Sallie Mae Alexander (surviving spouse), appellant, brought suit against the executor of her deceased husband's estate, two individuals, and a savings and loan association. She sought recovery of half of the amounts represented by two certificates of deposits, called savings certificates, issued by the savings and loan association. At husband's death, one certificate was in the joint name of the deceased and one individual defendant, Edward Ronald Alexander, with the other certificate in the joint name of the deceased and the other individual defendant, Coral Locklear. The ownership was as joint tenants. Wife's

petition alleges she was defrauded of her marital rights in the property through the joint tenancy ownership. After death, the savings and loan association redeemed and cancelled the certificates upon presentment by the surviving joint tenants. Demurrer of the defendant savings and loan association was sustained. Trial was to the court. Judgment entered for the remaining defendants.

E. R. Alexander, deceased spouse, married Sallie Mae Alexander, surviving spouse, in 1958. At marriage, he owned a farm and some unknown amount of money. They lived on the farm until 1972, when they moved into town. Their income was from farming and $106 per month World War II veteran's pension of the husband. He executed a will in 1964 leaving all his property to two nieces and two nephews. His wife was not mentioned. Subsequently, he removed one niece and a nephew from the will by scratching out their names and writing a notation on the will.

First Federal Savings and Loan Association of Elk City issued a duplicate passbook June 10, 1966, after the original was lost. Its first entry showed a savings account in the name of E. R. Alexander with a balance of $6,120.41 on December 31, 1965. Earlier history and source of this account is not established. That savings and loan association issued a certificate of deposit, entitled ·a savings certificate, for $14,000 on July 1, 1970, unto E. R. Alexander and Coral Locklear, the niece remaining in Alexander's will and one of the individual appellee defendants. The face of the certificate contains language "as joint tenants, and not as tenants in common with right of survivorship." As part of that transaction, there was a membership and signature card of the savings and loan association. It provides for membership in the association and the certificate of deposit account to be in the joint name "as joint tenants with the right of survivorship and not as tenants in common." The certificate and card bear the same account number. Both Alexander and Locklear ex-

ecuted the signature card. This certificate was purchased from a savings account transfer of $1,000 and probably by redeeming a prior certificate of $13,000. That certificate resulted from a $13,000 transfer from the savings account on July 3, 1969.

The savings and loan association issued a similar certificate and membership card on March 29, 1972, for $10,000 unto E. R. Alexander and Edward Ronald Alexander, the nephew remaining in the Alexander will and one of the individual appellee defendants, as joint tenants. The certificate face and the membership card contained the same language as the earlier ones. Both joint tenants executed the signature card. This certificate was purchased shortly after the sale of the farm in February, 1972 for $24,000. That sale price produced $14,000 cash and a $10,000 first mortgage. The certificate was probably purchased with part of this cash. There is no direct tracing of the cash to the certificate.

The deceased maintained a safety deposit box at a bank. This began long before his marriage. It was in his name. At an unknown date the nephew, Edward Ronald Alexander, was added as an authorized person to have access to the box. The bank's record shows no entry by other than the deceased until after death. On August 9, 1973, the box was entered by the nephew. It was inventoried·by the bank and the two savings certificates removed by the nephew. He gave the other certificate to the niece. The savings and loan association cancelled the certificates that date as indicated on their face.

E. R. Alexander died August 8, 1973. His will was probated. The unmentioned wife elected to take under the law of descent and distribution. His estate was appraised at $12,295.08, including the $10,000 farm mortgage valued at $8,240 with accrued interest. This did not include the two certificates held in joint tenancy. It did not include a house in town held in joint tenancy with the surviving spouse listed in the inventory for informational purposes at a value of $6,200.

At trial the evidence was basically records introduced as exhibits. The plaintiff and banker testified. Defendants presented no witnesses.

■ This case does not turn on the issue as to whether a joint tenancy ownership was intended and was established. That was decisive as to such cases as Dyer v. Vann, Okl., 359 P.2d 1061 (1961) ("Emmet D. Cornelius or Carol Sue Vann, minor") and Hendricks v. Grant County Bank, Okl., 379 P.2d 693 (1963) (payable to the order of herself or David C. Hendricks). Joint tenancy is "created by transfer to persons as joint tenant * * *." 60 O.S.1971, § 74. Raney v. Diehl, Okl., 482 P.2d 585, 590 (1971) held:

"In Oklahoma joint tenancy with right of survivorship in personal property may be created either by written instrument in compliance with 60 O.S.1961, § 74, or by proof of facts and circumstances on part of that person whose funds are invested in a certificate of deposit, evidencing an intelligent intention to create a condition embracing essential elements of joint ownership with right of survivorship in other person named."

Here a joint tenancy estate or interest was created by written instrument as allowed by statute. It need not be supported by a gift or a contract theory. It is enough to comply with the statute. That compliance creates the joint tenancy estate.

■ Plaintiff's brief argues incomplete gift as to the two certificates based on no delivery since the certificates were found after death in the safety deposit box. This position denies the elementary nature of a joint tenancy estate.

In Clovis v. Clovis, Okl., 460 P.2d 878 (1969), this court said:

"* * * Creation of a joint tenancy in property establishes a present estate in which *both joint tenants are seised of the whole*. Unity of time, title, interest,

and possession are requisites for creation, and the principle characteristic of the estate created is a right of survivorship. * * * This right of survivorship does not pass anything from a deceased joint tenant to the survivor since, by the very nature of joint tenancy, title of the joint tenant who dies first terminates at death and vests eo instanti in the survivor. *Both cotenants being seised of the whole,* the survivor's estate simply is a continuation, or extension, of the surviving tenant's existing estate. A joint tenancy simply creates a present estate which, absent severance of the tenancy during life of both tenants, assures the surviving joint tenant absolute ownership of the whole subject matter of the joint tenancy. The argument a gift inter vivos was intended would result in destruction of the unities of title and interest." (Emphasis added)

A joint tenancy is a present estate with all the joint tenants seized or in possession of the whole property. Possession of one joint tenant is possession of all the joint tenants until the joint tenancy is destroyed or a joint tenant holds possession adverse to the other joint tenant(s). This preserves the unity of possession. As said in *Clovis*, supra, "(T)he argument a gift inter vivos was intended would result in the destruction of the unities of title and interest," and we would add "of possession."

Plaintiff's position of incomplete gift also ignores the establishment of joint membership in the savings and loan association and of joint ownership of a "certificate of deposit account." Both the membership and account were as joint tenants. The two joint tenants executed the signature card in each of the two savings certificate transactions.

█ "As Oklahoma law now stands, when a joint account is created by express words of joint tenancy and survivorship, the survivorship interest can be sustained by Section 74 of Title 60 of the Oklahoma Statutes (1961). The survivor will get the legal title and unless he takes the title through fraud or in trust, he will get the beneficial interest." 20 Okl.L.Rev. 462, 466.

Peyton v. McCaslin, Okl., 417 P.2d 316 (1966) applied the constructive trust theory to a joint tenancy bank account. It would look at the circumstances surrounding the acquisition by the surviving joint tenant for indications the money was not to go with the surviving joint tenant's legal title but to a third party having a valid beneficial interest. By dicta, it would apply such a trust theory if the property had been acquired by fraud. *Peyton* cautioned and required the onus of establishing a constructive trust to lie on one seeking its enforcement. The evidence must be clear, unequivocal and decisive. In the present case we find no evidence of circumstances indicating other than the surviving joint tenants were to receive both the legal and beneficial interest upon the death of the other joint tenant, Alexander.

Plaintiff's petition alleges monies used to secure the two savings certificates were joint effort property acquired during coverture with the surviving wife having a vested marital interest. It is alleged she was defrauded of that interest through the creation of the joint tenancy ownership by her husband with his niece and nephew.

█ The trial court found the monies transferred for the savings certificates were the separate property of the husband. The evidence tends to support that conclusion but it is not conclusive. Whether the property was acquired before or after coverture does not control this case. Whether the property was acquired before or during coverture will effect the extent of the wife's marital interest in such property. However, marital rights are contingent and not vested. Sanditen v. Sanditen, Okl., 496 P.2d 365 (1972). Marital rights come from the marriage. Often they are spelled out by statute. 84 O.S.1971, § 213 gives property rights to surviving spouse on death of husband or wife as to both gener-

al property in the estate and property acquired by joint industry during coverture. There are other statutes granting contingent marital rights. See *Sanditen,* supra. 84 O.S.1971, § 44 is a similar statute. A spouse must be bequeathed or devised as much of the deceased spouse's estate no less in value than would be obtained through succession by law. If the property was not acquired by joint industry during coverture, then no more than one-half in value need be devised or bequeathed to the surviving spouse.

By these suggested statutes, the appellant, as the surviving spouse did have marital rights. They were contingent in nature and were not vested. When the contingency occurred, death of Alexander, the two savings certificates were no longer owned by Alexander for death had vested *eo instanti* whole ownership to the surviving joint tenant.

 Contingent marital rights are not destroyed if the transfer is in fraud of those marital rights. It is only when there are sinister elements of fraud of the marital right that the law protects the surviving spouse. The burden of proof rests strongly on that surviving spouse. Fraud will not be implied from doubtful circumstances which only awaken suspicion. *Sanditen,* supra. A transfer that defeats contingent marital rights is not ineffective, per se. Fraud of those marital rights must be proven and judicially determined.

In the case at bar, the most doubtful circumstance is the omission of the wife from the will. This occurred in 1964 after the marriage in 1958. The first savings certificate held in joint tenancy other than with the wife was issued in 1970. The other joint tenancy savings certificate was issued in 1972. The total face value of the two certificates was $24,000. The wife, through joint tenancy, received the house in town with a value of some $6,000. She also received her interest in the approximately $12,000 estate by her election to take by succession. These circumstances could be found to awaken suspicion. They do not prove fraud. Fraud will not be implied from the circumstances of this case.

 The creation of the joint tenancy interest in the certificates of deposit denoted as savings certificates was not in fraud of the marital right of the surviving spouse. Upon death of E. R. Alexander, the surviving joint tenant became the owner of the whole interest in each of the certificates including both the legal and beneficial interest.

Affirmed.

All the Justices concur.