In the Matter of the ESTATE OF
Lola Jane INGRAM, Deceased.

Shirley GAZALSKI, Individually and in Her Capacity As Personal Representative of the Estate of Lola Jane Ingram, Appellant,

v.

Norma GOSS and Doyle
Ingram, Appellees.

No. 79637.

Supreme Court of Oklahoma.

May 17, 1994.

public officials." *Davis v. Davis,* 708 P.2d 1102, 1107 fn. 23 (Okla.1985).

Donald W. Henson, Okmulgee, for appellant.

Ron Wright, Muskogee, for appellees.

SUMMERS, Justice:

The first question is whether a will severs a valid joint tenancy so that jointly held property passes through the estate rather than to the surviving joint tenant. We hold that it does not. The second question is whether bank accounts described as "joint", but lacking, as far as we can find, any language of "survivorship", create a valid joint tenancy. We find that under the facts of this case they do not.

Lola Jane Ingram established a savings account and a checking account, and on each of these accounts named as a co-signor Shirley Gazalski, one of her daughters. Ingram later created three certificates of deposit, each of which named Gazalski as a co-tenant in a joint tenancy relationship. The CD's specifically established joint tenancy with the right of survivorship.

Four days prior to her death, at the request of her other children, Ingram, the mother, wrote a holographic will which stated that she wanted her entire estate "including bank account and CD" divided equally among her four children: Doyle Ingram, Shirley Gazalski, Zeda Jenkins and Norma Goss. The will appointed Gazalski as the personal representative of Ingram's estate. After the mother's death, Gazalski kept the money from the checking and savings accounts as well as the three certificates of deposit. She sold mother's house and car and distributed the proceeds equally among the four children.

The other three children objected to the final accounting presented by Gazalski, arguing that their mother's intent was to include the bank accounts and the certificates of

deposit in the estate. At the hearing before the trial court, Gazalski, who had cared for her mother on a day to day basis, testified that her mother intended for the bank accounts and the certificates of deposit to be hers. She stated that her mother told her that the proceeds from the sale of the house and car were to be divided, but that the bank accounts and certificates of deposit were in a joint tenancy so that Gazalski would receive them.

On cross examination Gazalski agreed that she did not receive the interest from the certificates of deposit, and that the interest had been claimed, for income tax purposes, by her mother. She also testified that she contributed *none* of the money held in the accounts or the CD's. Gazalski testified that she never used any of the funds in the bank accounts for her personal benefit, although her mother told her that she use could the money if she so chose.

Norma Goss testified that her mother told her that Gazalski's name was on the accounts so that someone would be able to pay her bills. Goss also stated that Ingram never talked to her about the certificates of deposit or the bank accounts, but did state that she wanted "everything" divided among her four children. Goss did not know what Ingram intended to be included in "everything."

The trial court held that the bank accounts and the certificates of deposit were to be included in the estate, and were not the property of Gazalski as a joint tenant. The Court of Appeals, Division III, affirmed, stating that (1) there was no express language of joint tenancy in the documentation of the bank accounts and (2) that there was sufficient evidence to support the trial court's ruling with regard to the certificates of deposit. We reverse and remand in part, directing that certificates of deposit not be included as property of the estate. As to the bank accounts, we affirm.

1. Section 74 reads in relevant part:
 A joint interest is one owned by several persons in either real or personal property in equal shares, being a joint title created by a single instrument, will or transfer when expressly declared in the instrument, will or

## THE CERTIFICATES OF DEPOSIT

The three certificates of deposit established by Ingram totalled $63,000.00 at the time of her death. The language on the face of the certificates specifically stated that the certificates were payable to "said depositor(s), or if more than one depositor as joint tenants with the right of survivorship." Both Ingram's and Gazalski's names appeared on the face of all three certificates.

 A joint tenancy can be created in two ways: (1) By express language in the instrument, as contemplated by 60 O.S.1991 § 74,[1] and (2) by actions of the party creating the joint tenancy which show an intention to create the essential elements of joint ownership and survivorship. *Raney v. Diehl*, 482 P.2d 585, 590 (Okla.1971); *Dyer v. Vann*, 359 P.2d 1061 (Okla.1961). When the owner of property transfers funds or property to herself and another by a written agreement which meets the requirements of a joint tenancy, a joint tenancy is created with the right of survivorship. *Raney*, 482 P.2d at 590; *Barton v. Hooker*, 283 P.2d 514 (Okla.1955).

 The distinguishing characteristic of joint tenancy is the right of survivorship. *Clovis v. Clovis*, 460 P.2d 878, 881 (Okla. 1969). *Mercer v. Mercer*, 365 P.2d 554 (Okla. 1961); *See also Shackelton v. Sherrard*, 385 P.2d 898, 901 (Okla.1963). "A joint tenancy simply creates a present estate which, absent severance of the tenancy during the life of both tenants, assures the surviving joint tenant absolute ownership of the whole subject matter of the joint tenancy." *Clovis*, 460 P.2d at 882.

In *Alexander v. Alexander*, 538 P.2d 200 (Okla.1975), we analyzed certificates of deposit appearing to be in joint tenancy. The deceased had established certificates of deposit in his name and the name of his niece

transfer to be a joint tenancy, or as between husband and wife a tenancy by entirety or joint tenancy as the grantor may elect, or when granting or division to executors or trustees as joint tenants.

and nephew. The certificates specifically stated on the face of the documents that they were held "as joint tenants and not as tenants in common with right of survivorship." *Id.* at 201. The wife of the deceased urged that the certificates were merely incomplete gifts to the niece and nephew, or in the alternative, that the certificates were only a constructive trust. We disagreed, stating that there was no doubt that the certificate's language created a joint tenancy in accordance with the statute. The Court further stated that there was no indication that the deceased intended a constructive trust. Rather, the express language on the face of the documents showed his intent to be the creation of a joint tenancy. *Id.* at 203.

In the present case, the language on the face of the certificates established a joint tenancy. Both parties were listed as joint tenants, and the certificate provided that the parties had the right of survivorship. Children urge that even if there was a joint tenancy, it was severed by Ingram's subsequently executed will. In the alternative, they urge by implication that the joint tenancy was created only for convenience, and was more in the nature of a constructive trust, with the intended beneficiaries being all four children.

■ As for their first argument, we do not agree that the joint tenancy was severed by the will. A joint tenancy can be severed, but only during the lifetime of the tenant who would sever. *Littlefield v. Roberts,* 448 P.2d 851, 855 (Okla.1969); *Shackelton,* 385 P.2d at 901. The reason the argument fails is that at the death of one tenant, the title to the property passes by operation of law to the surviving tenant. *Littlefield,* 448 P.2d at 855.

In *Littlefield,* property was placed in joint tenancy by a deed conveying to a mother and one of her daughters. The mother's will, executed after the joint tenancy deed, stated that the property subject to the deed was to be split among her children. The will even stated that the deed was one of convenience; however, no such language appeared in the

deed itself. While we agreed that the will may show that the mother's intent changed after the execution of the deed, the will did not operate as a severance, because it had no effect until her death. A joint tenancy cannot be severed after the death of the party who would sever. Thus, the daughter, as the surviving joint tenant, was the owner of the property.

In *Shackelton,* 385 P.2d at 901, we held that the acts of one of the joint tenants operated to sever the joint tenancy. There, land was placed in a joint tenancy between a husband and wife. Later, the husband deeded his part of the land to his son. We held that the second deed of the husband was inconsistent with a joint tenancy, and destroyed the required unity of interest. Since the inconsistent act occurred during the lifetime of the husband, a severance of the joint tenancy resulted.

Likewise, in *Clovis v. Clovis,* 460 P.2d at 882, the mother executed a joint tenancy deed, naming herself and her son as joint tenants. The deed was executed under fraudulent circumstances, and the mother then attempted to cancel the joint tenancy. The court held that the joint tenancy was severed because a joint tenancy can be severed during the lifetime of the tenant. *Id.*

Our case is controlled by *Alexander* and *Littlefield.* Unlike *Shackelton* and *Clovis,* here the mother's act claimed as one of severance was the execution of a will which did not take effect until her death. Thus no severance was accomplished during her lifetime. While the will may be evidence of a changed intent, no act occurred prior to her death which terminated the joint tenancies as established by the certificates of deposit. The Children presented no evidence other than the will to support their argument for severance. When Ingram died, the surviving joint tenant Gazalski became the sole owner of the certificates of deposit. *See Peyton v. McCaslin,* 417 P.2d 316, 320 (Okla.1966) (property in a joint tenancy becomes the sole and separate property of the surviving tenant at the death of the designating owner and

tenant).[2]

■ As for the Children's other argument that the certificates of deposit were held in a constructive trust, we find that they failed to meet their heavy burden of proving such a trust. Equity can be invoked when the circumstances surrounding a joint tenancy show that the surviving joint tenant was only to hold legal title while the beneficial title was intended to inure to another. *Peyton*, 417 P.2d at 320.

> If one obtains the legal title to property by fraud or by violation of confidence or fiduciary relationship, or in any other unconscientious manner so that he cannot equitably retain the property which really belongs to an other, equity carries out its theory of a double ownership, equitable and legal, by imposing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner.

*Id.* at 321, citing as authority *Powell v. Chastain*, 318 P.2d 859 (Okla.1957); *McCaleb v. McKinley*, 80 Okla. 38, 194 P. 105 (1920).

■ A constructive trust is an involuntary or implied trust which arises by operation of law. *Cacy*, 619 P.2d at 202 (Okla. 1980). It is imposed against an individual when the individual obtains legal right to property through fraudulent, abusive means, or by means "against equity and good conscience." *Id.* The primary reason for imposing a constructive trust is to avoid unjust enrichment. *Easterling*, 651 P.2d at 680.[3] However, "unfairness" is not reason enough to impose a trust:

> [A]n element of unfairness in allowing the legal title holder to retain the property is not sufficient to justify the imposition of a constructive trust. There must also be some active wrongdoing on the part of the

person against whom recovery is sought. . . .

*Robison v. Graham*, 799 P.2d 610, 616 (Okla. 1990) quoting, *Easterling*, 651 P.2d at 680–81.

■ The burden of proving a constructive trust is on the person or persons asserting it. *Peyton*, 417 P.2d at 321. Before a court will recognize and enforce a constructive trust, the evidence must be "clear, unequivocal, and decisive." *Id.* A mere preponderance of the evidence is insufficient to prove a constructive trust, the evidence must lead to but one conclusion and leave no reasonable doubt as to the existence of the trust. *Easterling v. Ferris*, 651 P.2d 677, 681 (Okla. 1982); *Cacy v. Cacy*, 619 P.2d 200, 202 (Okla. 1980); *Perdue v. Hartman*, 408 P.2d 293 (Okla.1965). This heavy burden is necessary to protect the security of titles. *Regal v. Riegel*, 463 P.2d 680 (Okla.1969).

■ The Children assert that the will, combined with Goss' testimony, is sufficient evidence to support the constructive trust. They do not allege fraud or duress by Gazalski. In fact, they do not allege any wrongdoing by Gazalski. Gazalski testified that she cared daily for her mother, and that the mother herself arranged the joint tenancy. We do not find the evidence presented by the children to be so "clear, unequivocal, and decisive" as is required to impose a constructive trust. *Peyton*, 417 P.2d at 321.

The certificates of deposit, formerly being in joint tenancy, are now owned by Gazalski as the surviving tenant. The joint tenancy was not severed by the will, and there is insufficient evidence to show a constructive trust. The trial court erred in including the certificates in the estate.

## THE BANK ACCOUNTS

■ Unlike the certificates of deposit, the bank accounts do not expressly state that

---

**2.** See also *Draughon v. Wright*, 200 Okla. 198, 191 P.2d 921 (1948); *Royston v. Besett*, 183 Okla. 643, 83 P.2d 874 (1938); *Barton v. Hooker*, 283 P.2d 514 (Okla.1955).

**3.** See also *Robison v. Graham*, 799 P.2d 610 (Okla.1990); *Cacy v. Cacy*, 619 P.2d 200 (Okla. 1980); *Haskell Lemon Const. Co. v. Independent School District*, 589 P.2d 677 (Okla.1979); *Marshall v. Amos*, 471 P.2d 896 (Okla.1970).

they include the right of survivorship. The photocopy of the front side of the signature cards provided that both the savings account and the checking account were "joint." The cards also state that the account is governed by the rules and regulations on the back of the cards. However, a photocopy of the back of the cards is not in the record before this Court. Thus, the only express language indicating the possibility of a joint tenancy is use of the word "joint" in connection with the checking and savings accounts.

■ The usual and safe way to create a joint tenancy is for the grantor to use the words "as joint tenants with right of survivorship", or similar language, in the grant of the property. *See Alexander,* 538 P.2d at 201. This language helps to show the intent of the grantor and to overcome statutory or common law presumptions of tenancies in common. Powell, *The Law of Property* § 616[1] (1993). Some states have enacted statutes to require such language. *See Ephran v. Frazier,* 840 S.W.2d 81 (Tex.Ct. App.1992).

Here, we do not find a joint tenancy created by express language. The signature cards make no mention of "tenancy" or "survivorship", nor is there any other language to suggest it. In *Guilinger v. Guilinger,* 433 P.2d 946, 947 (Okla.1967), we found that the bank account in question was not a joint tenancy, even though the signature card, as here, provided that the account was "joint." We held that this alone was not sufficient to create a joint tenancy by express language.[4] We then looked at the circumstances surrounding the account, and found no intent to create a joint tenancy.

■ As stated above, there are two ways in which a joint tenancy can be created. Clearly, the record on appeal does not contain the usual express language creating joint tenancy bank accounts, because such words as "with right of survivorship", or "or surviv-

or", or even the initials "JTWRS" do not appear. However, a joint tenancy may be found to exist if the intentions of the grantor may be shown to clearly so indicate.

From review of our decisions it appears we recognize two categories of joint tenancies with right of survivorship. First those falling within the statute, supra, created by written instrument expressly declaring the relationship. *Second, those not created with words of joint tenancy or survivorship, but which are determined to exist because the party initiating the relationship ' * * * intentionally and intelligently created essential elements of joint ownership and survivorship.'*

*Raney v. Diehl,* 482 P.2d at 590, quoting *Dyer v. Vann,* 359 P.2d 1061 (Okla.1961). (Emphasis added, citations omitted). When considering the evidence as to whether a joint tenancy is created in the second way mentioned, it is not critical that specific words like "survivorship" or "joint ownership" are omitted. *Dyer v. Vann,* 359 P.2d at 1063.

■ *Raney* set out five factors to consider when faced with the question of whether a joint tenancy was created in the absence of the usual language: (1) the owner's unqualified expression of intent to create the relationship of joint tenant at that time; (2) whether the establishment of the account was in the form advised by a bank officer upon the owner's inquiry as to the means of accomplishing a joint tenancy; (3) whether accessibility to the account was given to both parties after the creation of the account; (4) whether both tenants have consented to discretional use of the account; and (5) whether there was an exercise of possessory rights by any of the joint tenants. *Id.* at 591. *See also Hendricks v. Grant County Bank,* 379 P.2d 693 (Okla.1963); *Dyer v. Vann,* 359 P.2d at 1063. These factors must be considered as a whole; one is not determinative of the issue.

In the present case, we have no evidence which shows that it was the unqualified in-

---

**4.** On the reverse side of the card in *Guilinger* was a printed form setting up a joint account with right of survivorship, and a place for signatures if survivorship was desired. Neither party signed on the reverse of the card.

tention of the owner to create a joint tenancy with right of survivorship. Nor do we have any evidence that inquiry was made to a bank official or any other person about the ramifications of a joint tenancy account. Both parties did have access to the accounts, but the record indicates that possessory rights were exercised only by Ingram. Since Gazalski had access to the accounts, she could have used the money in the accounts. However, she testified that she did not use any of the money in the account prior to Ingram's death.

There is insufficient evidence to show that the bank accounts were intended to be in joint tenancy. The record before us does not include evidence of the other side of the signature cards, which were said to have contained the rules and regulations governing the accounts. The evidence presented as to the intent of the deceased is not such that we are persuaded that a joint tenancy with right of survivorship was intended.

## CONCLUSION

The Order of the District Court finding no joint tenancy ownership with respect to the bank checking account and savings account is affirmed. Those accounts are properly part of the estate. That part of the Order placing the certificates of deposit in the estate is reversed. The CD's are the property of surviving joint tenant, Gazalski. The opinion of the Court of Appeals is vacated, and the case is remanded for conclusion in a manner consistent with this opinion.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, ALMA WILSON and WATT, JJ., concur.

KAUGER, J., concurring in result.

HARGRAVE and OPALA, JJ., concurring in part and dissenting in part.

OPALA, Justice, concurring in part and dissenting in part.

I would today—on the very same theory as that invoked by the Court of Appeals—affirm the trial court's decision with respect to the ownership of the contested certificates of deposit and would hold that the decedent *had retained full equitable interest* in all of these certificates as their *beneficial owner, the legal title to the instruments being impressed with a resulting trust* in the decedent's favor. *Courts v. Aldridge,* 190 Okl. 29, 120 P.2d 362, 364–365 (1941).