**In the Matter of the ESTATE of Ralph W. BURNS, Deceased.**

**Arthur H. BURNS, Individually and as Executor of the Estate of Paul G. Burns, Deceased, Verbal E. Burns, and Harold W. Burns, Appellants,**

v.

**Bryan L. BURNS, Executor of the Estate of Ralph W. Burns, Deceased, Appellee.**

No. 51299.

Court of Appeals of Oklahoma, Division 2.

July 25, 1978.

Rehearing Denied Aug. 22, 1978.

Certiorari Denied Oct. 23, 1978.

Released for Publication by Order of Court of Appeals Oct. 26, 1978.

---

Bryan L. Wright, Wright, Dale & Jett, Guymon, for appellants.

David K. Petty, Tryon, Field & Petty, Guymon, for appellee.

NEPTUNE, Presiding Judge.

This appeal arises from the probate court's order declaring that a 200-year-old family Bible is a part of the estate of a particular descendant rather than property subject to an implied trust which would permit the Bible to descend to the oldest male member of the family.

J. W. Burns was in possession of and claimed the Bible as his property at the time of his death in 1936. Surviving J. W. were his wife Clara and three sons, Paul, the eldest, Ralph and Verbal, the youngest. The Bible was kept in J. W.'s house until his widow died in 1952.

Paul came into possession of the Bible at his mother's death and at about the same time the Bible was either borrowed by Ralph in order that he could copy some things out of it or it was given to him by Paul. Paul died in 1971. Ralph maintained possession of the Bible for about 25 years until his death in 1976.

When Ralph's son Bryan, as executor of Ralph's estate, filed his petition for distribution of Ralph's estate, Paul's son Arthur, as executor of Paul's estate, filed a motion seeking delivery of the Bible to him as executor. At the hearing on the motion, appellee executor Bryan contended that the Bible was an asset of his father's estate. Appellants contested appellee's claim and argued in essence that by family tradition the Bible was to be held by the oldest male heir of the Burns family—who at the time of trial was appellant Verbal, then 75 years of age.

At the conclusion of the evidence relating to appellant's motion, the trial court held that the Bible was a part of the Ralph Burns' estate, and overruled the motion for delivery of the family Bible, provoking this appeal.

■ We will review the evidence presented in order to determine whether the probate court's adjudication was clearly against the weight of the evidence. If it is not, the trial court's judgment will not be disturbed. *French v. Robbins*, Okl., 475 P.2d 377 (1970).

I

Appellants set forth two contentions under their first proposition of error.

First, appellants contend that testimony by Arthur and Verbal Burns was uncontroverted and established family tradition "that legal ownership [of the Bible] vests with the oldest living male family member and upon his death to the next oldest living male family member." Appellants further reason that establishment of and acquiescence to family tradition is sufficient to constitute an express trust even though it is not in writing.

Before an express trust can be created, there must be some act by the settlor expressing an intent to create a trust and to designate a trustee. As pointed out in its first syllabus in *Bryant v. Mahan*, 130 Okl. 67, 264 P. 811 (1928), the Oklahoma Supreme Court emphasized that express trusts are generally created by instruments that point out directly and expressly the property, persons, and purpose of the trust. Being without an intentional act by the settlor creating the trust, and without direct and express provisions for the property, persons, and trust purpose, the evidence does not support the creation of an express trust. The trial court did not err in failing to find that such trust was created.

Secondly, appellants contend that the evidence required the trial court to impose its equitable powers and imply a trust by operation of law. In contrast to the express trust are those known as implied trusts. They are implied, presumed, or construed by law to rise out of the transactions of the parties. *Bryant v. Mahan, supra.* The onus of establishing an implied trust rests upon the party seeking its enforcement—appellants in the instant case. Implied trusts are of two species—resulting and constructive. *Powell v. Chastain*, Okl., 318 P.2d 859 (1957).

A constructive or resulting trust may be established by oral testimony, but such evidence must be clear, cogent, and convincing. *Henderson v. Gifford*, Okl., 318 P.2d 404 (1957).

A constructive trust is such as is raised by equity in respect of property which has been acquired by fraud, or where, though acquired without fraud, it is against equity that it should be retained by him who holds it. *Marshall v. Amos*, Okl., 471 P.2d 896 (1970). Appellants' evidence does not establish a basis for declaring a constructive trust.

A resulting trust may arise by operation of law and exists where intent either appears or is inferred from accompanying circumstances that beneficial interest is not to be enjoyed with legal title. *Trimble v. Boles*, 169 Okl. 228, 36 P.2d 861 (1934). In the instant case, legal title to the Bible was not established by the evidence; and the evidence supporting the existence of a family tradition was at best vague, and even that was controverted. The trial court did not err by failing to find a resulting trust.

## II

Appellants under their second proposition aver that title and ownership vested in Paul at the death of J. W. by agreement and acquiescence of the family members. The evidence does not support such contention, and consequently the trial court did not err by failing to find title and ownership vested in Paul.

## III

Appellants' last proposition urges that there have been no legal transactions by which title has vested in Ralph or his estate and that his possession has been that of a bailee or trustee.

This proposition prompts us to focus upon the critical question of devolution of title to the Bible. There is an absence in the record of any indicia of ownership of the Bible except for the document written by J. W. during his lifetime by which he claimed the Bible was his property. The document and other evidence, however, clearly show that the book was a "family Bible." As such, it would not be an asset of the estate of J. W. and would, at J. W.'s death in 1936, be the property of the widow inasmuch as there were then no minor children. 58 O.S.1971 §§ 311 & 316.

At the widow's death in 1952, in the absence of a will or of a surviving spouse, the widow's children would succeed to the ownership of the Bible in equal shares. The only surviving child, Verbal, testified that there were no wills saying where the Bible was to go, and this testimony was not controverted. The record discloses no other disposition of the Bible, thus impelling the presumption of the succession to ownership of it by the three brothers, Paul, Ralph, and Verbal, children who survived the widow. 84 O.S.1971 § 213.

Does the possession of the Bible by one of the three owners for a period of 25 years, without more, afford a basis for the conclusion that the possessor is the sole owner?

Possession of personalty, in the absence of evidence to the contrary, gives rise to a presumption of ownership. *Kova Pipe Line Co. v. Liles*, 186 Okl. 212, 97 P.2d 43 (1939). There is in this record, however, evidence contrary to Ralph's sole ownership of the Bible. As above mentioned, there is evidence supporting common ownership among the three brothers. There is also evidence that Ralph borrowed the Bible from Paul. The evidence that Paul "gave" the Bible to Ralph is of no probative value concerning title because there is no evidence that Paul owned the Bible. Therefore, aside from his undivided interest, the only support for Ralph's executor's claim to the Bible is Ralph's longtime possession of it. There is nothing to indicate that the possession exercised by Ralph was adverse to the interests of Verbal and of Paul or of Paul's heirs or legatees. Of course, the Bible would not be physically possessed by all three of the brothers at the same time, so possession by one was not inimical to the interests of the others. Intestate decedents often fail to dispose of an item of peculiar monetary or sentimental value, so that several equally entitled heirs vie for possession of it. The strong or selfish usually prevail. Sometimes the earliest heir on the premises succeeds. Among several equally entitled to an indivisible asset, the one who possesses it without accommodation or consideration to the others has no greater interest or right to the item by virtue of the possession than do the others out of possession. Until Ralph's death in 1976, there appeared to be no reason for Verbal to make any assertion of possessory rights. Even then, in the absence of recognition of the asserted tradition, Verbal's right to possession would only be equal to that of his late brothers' legatees or heirs.

Upon the basis of the whole record, we are unable to agree with the trial court's finding that Ralph at his death was the sole owner of the Bible. This finding is critical to the decision. Accordingly, we hold that that finding should be and is vacated, because it was clearly against the weight of the evidence.

Because the decision of the trial court was based upon a decisive finding which we direct be vacated, it is necessary that the matter be remanded to the trial court for reconsideration on the premise that the Bible is the common property of Verbal and the heirs or legatees of his two deceased brothers.

Remanded for further proceedings.

BACON and BRIGHTMIRE, JJ., concur.