**Alton C. WOOTTON and Geneva Wootton, husband and wife, Appellants,**

v.

**Lela MELTON, a widow, and Thermo-Dyne, Inc., Appellees.**

No. 53822.

Court of Appeals of Oklahoma, Division No. 2.

April 14, 1981.

Released for Publication by Order of Court of Appeals May 21, 1981.

————————

James R. Moore, Hollis, for appellants.

Yonne P. McDaniel, Mangum, for appellee Lela Melton.

BRIGHTMIRE, Judge.

The principal issue to be decided is whether or not the evidence is sufficient to sustain a finding that the grantor of certain land is the beneficial owner of a life estate interest in one-half the income from oil and gas production from land conveyed years earlier. The trial court, in holding the 88-year-old grantor was entitled to such income, found "that by virtue of the acts of the Parties, a Trust has been created in which B. D. MELTON and LELA MELTON [defendant] are to receive ½ of the income from oil and gas produced from the mineral interest owned by ALTON C. WOOTTON and GENEVA WOOTTON ... [and] ... that said Trust Agreement is a Life Estate only and will terminate upon the death of LELA MELTON."

I

The orientational facts are largely undisputed. The Meltons sold 160 acres of Greer County, Oklahoma land to the Woottons in 1955. The recorded written contract of sale recited that it is "specifically understood that first parties [sellers] reserve from this sale an undivided one-half (½) of all the minerals in and under said premises ...."

In 1961, Alton Wootton said, B. D. Melton was redoing his house and approached him wanting to know if he, Wootton, could pay off early the balance due under the contract. To induce a favorable response, said Wootton, Melton agreed to relinquish his contractual rights to half the minerals. Wootton told the inquirer that he thought he could borrow the necessary money from the bank and promised to try. He got the needed funds and on December 5, 1961, he and his wife met with the Meltons in the office of the Meltons' lawyer—the same one who represents Mrs. Melton in this proceeding. Apparently to determine how the deed should be drawn, the lawyer inquired about the minerals reserved in the contract. Said Melton to his lawyer: "The minerals do go with the place." Accordingly, the lawyer prepared a deed that conveyed all of the Meltons' interest in the land and that did not reserve any mineral interest. Both Meltons signed it and it was filed of record the same day.

Alton Wootton also testified that Melton had asked him earlier if he, Wootton, would let him have half of the lease bonus money in the event Wootton leased during Melton's lifetime. Wootton said he would and thereafter leased it twice. The first time he divided the lease bonus with Melton and the next time he divided it with his widow as a gesture of appreciation for the fact that Melton had been good to him.

Thus the matter laid until March 2, 1977, when Mrs. Melton's lawyer prepared a warranty deed in which "Lela Melton, a widow," purported to convey the land in question to the Woottons, reserving nearly a half interest in the minerals. Lela signed the deed, her lawyer acknowledged it, and it was filed of record.

What undoubtedly provoked this action was the fact that defendant Thermo-Dyne, Inc., had obtained an oil and gas lease on the property in 1976 and drilled a producing well. Because of these conflicting mineral interest claims, the lessee held the royalty proceeds in suspense. The Woottons, consequently, brought this action in January 1978 asking the court to cancel the 1977 Melton deed, quiet their title to the minerals, and direct the lessee to pay all the royalty to them. Lela Melton answered with a denial and a cross-petition in which she admitted she executed the 1961 warranty deed conveying all her interest in subject land, but alleging she, in the earlier contract of sale, reserved a half interest in the minerals and that "plaintiffs acknowledged and recognized said mineral interest ... at all times from the date of [the] contract until about January, 1977." It was about this time, she alleged, that she became aware that the Woottons were claiming all

the mineral interest and, consequently, she made, executed and filed "a clarification deed" of record on March 2, 1977. She asked the court to quiet her title to nearly half the minerals.

The case was tried on April 25, 1979. After hearing the evidence, the trial court: (1) cancelled the "clarification" deed and quieted the Woottons' title to all the minerals; and (2) ordered that half the oil and gas royalty be paid to Lela Melton for the rest of her life based on the finding of a trust having been established by the "acts of the [p]arties."

The Woottons contend the court should have found that: (1) relief to Lela Melton was barred by the statute of limitations; (2) there was no pleaded nor proved foundation for the trust established; and (3) the Woottons were entitled to a reasonable attorney's fee.

Lela Melton, on the other hand, says the court should have reformed the 1961 deed by inserting a clause reserving half the minerals in her.

## II

■ The trial court's cancellation of the beclouding and slanderous "clarification" deed inappropriately filed by Lela Melton in 1977 was legally, equitably, and factually correct. The deed was at war with the warranty she solemnized in 1961. Neither the pleadings nor the proof allude to any fact or circumstance which would justify judicial alteration of the 1961 deed. No mistake was made, mutual or otherwise. The undisputed evidence is that the deed was prepared by the Meltons' lawyer in accord with the express direction of B. D. Melton that all the "minerals ... go with the place." And, of course, it superceded the contract of sale.

Absent some showing that the 1961 deed in some manner failed to comport with the intention of the parties, there was nothing to reform, and the trial court's judicial duty compelled him to place a protective shield around the document.

## III

The remaining substantive question is whether judicial creation of the trust was factually permissible. Lela Melton did not plead that the Woottons held any minerals in trust for her. She alleged that the reservation specified in the contract of sale had the effect of reserving half of the minerals in her and that "plaintiffs acknowledged [such] interest ... at all times from the date of said contract until about January, 1977." And, she continued, it was not long after this that she filed her celebrated "clarification" deed. Nor did Mrs. Melton ask the court to establish a trust with regard to the minerals. Instead, she asked that title to nearly half of the minerals be quieted in her. Later she filed an amendment "to the prayer" of her cross-petition asking the court for "an order reforming the Warranty Deed dated December 5, 1961," by adding to the description a clause reserving half of the minerals in the grantors.

As we said, the trial judge concluded that validity of the 1961 deed had to be confirmed. Apparently, however, he felt that an oral commitment Alton Wootton said he made to B. D. Melton just before execution of the 1961 deed—to give half of the "lease bonus" of any lease he made to B. D. Melton as long as the latter lived—meant that Wootton agreed to give half of all "income from oil and gas for their [the Meltons] lifetime ...," and such commitment justified judicial creation of an equitable trust.

Without the advantage we have—that is, having a transcript of the testimony to review—we can see how the trial court might well have arrived at this assessment of the facts. Given this advantage, though, we are inclined to think he would agree with us that the evidence really will not support a finding the Woottons hold half of the minerals in trust for the Meltons with beneficial interest reverting to the Woottons upon the death of both Meltons.

■ To begin with we know, of course, no express trust was created. An oral vow

to pay another half of any bonus received from a future mineral lease does not operate to transfer title or any interest in the minerals to the vowee. If a trust there was, it had to be one created by the law—either a constructive or resulting one.

 Both constructive and resulting trusts are remedial in the sense that they are devices to prevent wrongful taking or unlawful holding of property. A constructive trust may be implied by law when one, through some manner of wrongdoing—e. g. fraud, abuse of confidence, or trick—obtains title to property. A resulting trust, on the other hand, may be judicially imposed on one holding legal title to property if it was obtained under facts and circumstances disclosing an intention that the beneficial interest was not to be enjoyed by the legal title holder. It is usually difficult to prove a foundation for such a trust because it takes more than a preponderance of the evidence—it takes evidence that is "clear, unequivocal and decisive beyond a reasonable doubt." *Cacy v. Cacy*, Okl., 619 P.2d 200 (1980).

As the facts we narrated earlier suggest, the Woottons were guilty of no wrongful act in obtaining the 1961 deed. To the contrary, they responded to a request of the Meltons for early payment of the purchase price balance as consideration for the mineral interest contractually reserved by the Meltons. Hence, constructive trust cannot be imposed.

Nor can Alton Wootton's promise to split any future lease bonus with B. D. Melton be construed to impute an intention to divide income from any future oil and gas production. The likelihood is—judging from the casualness with which they regarded the mineral rights—that the parties had no real appreciation for or expectancy of eventual oil and gas production. They did know that leases were occasionally being sought and thus it is not at all unlikely that the parol commitment of Wootton was limited to just what he said it was—to lease

bonus money. Viewed in any light, the evidence will not support a finding that the Meltons, in conveying title to the minerals to the Woottons, intended to reserve the beneficial interest to half of it. And, as we have seen, the absence of such intention is fatal to the judicial establishment of a resulting trust.

## IV

The decree is modified by deleting the last paragraph, which provides that Lela Melton shall receive one-half "of the income from oil and gas produced from the mineral interest owned by ALTON C. WOOTTON and GENEVA WOOTTON," for the rest of her life. The judgment is further modified by entering judgment in favor of the Woottons on Lela Melton's cross-petition. In all other respects the judgment of the trial court is affirmed. Each party is ordered to pay his or her own attorney's fee.

BACON, P. J., and BOYDSTON, J., concur.