1998 OK CIV APP 12

1998 OK CIV APP 12

**TULSA COUNTY PUBLIC FACILITIES AUTHORITY, Protestant/Appellant,**

v.

**The STATE of Oklahoma, ex rel. OKLAHOMA TAX COMMISSION, Defendant/Appellee.**

No. 87608.

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 23, 1997.

Certiorari Denied Feb. 10, 1998.

Graydon D. Luthey, Jr., Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, for Protestant/Appellant.

Gregory K. Frizzell, John A. Grissom, Jr., Sean R. McFarland, Oklahoma Tax Commission, Oklahoma City, for Defendant/Appellee.

*OPINION*

BUETTNER, Judge:

¶ 1 Appellant, Tulsa County Public Facilities Authority ("TCPFA") appeals an adverse

ruling made by the Oklahoma Tax Commission ("OTC"). On February 26, 1996, TCPFA received a letter from OTC informing it that it owed $60,000 plus a penalty for unpaid pari-mutuel tax. TCPFA's protest was presented on a joint stipulation of facts and was heard by OTC *en banc.* OTC commissioners ruled that TCPFA was liable for the pari-mutuel tax, despite TCPFA's status as a public trust. TCPFA now appeals that decision. We hold that the tax imposed on pari-mutuel wagers under the circumstances of this case is proper. Because the tax was limited to simulcast racing when no fair meet racing was in session and because the tax is taken from the pari-mutuel wager pool, rather than income from the public trust, we affirm the OTC order.

¶ 2 TCPFA is a public trust for the benefit of Tulsa County.[1] TCPFA operates the Tulsa County Fairgrounds which includes the Fair Meadows at Tulsa horse racing facility.[2] The Oklahoma Horse Racing Act provides that fair associations such as TCPFA may be licensed by the Oklahoma Horse Racing Commission to conduct one race meeting (called "fair meets") per year within the county in which the fair association is located. 3A O.S.Supp.1995 § 208.2(A). TCPFA held such a license and properly conducted fair meets.

¶ 3 The Oklahoma Horse Racing Act provides for the distribution of funds retained from pari-mutuel wagers. 3A O.S.Supp.1995 § 205.6. That section provides for the distribution of a percentage of those funds to OTC. Wagers received during fair meets are not subject to distribution and are therefore considered tax exempt. 3A O.S.Supp. 1995 § 208.2(A).[3] Oklahoma statutes provide that licensed race facilities may accept wagering on simulcast racing occurring at other horse racing facilities both in and out of state. 3A O.S.Supp.1995 §§ 205.7 and 205.7a. TCPFA in fact accepted pari-mutuel wagering for off-premises simulcast races. TCPFA did not pay taxes on revenue from simulcast wagering, however.

■ ¶ 4 Gordon Hare, Executive Director of the Oklahoma Horse Racing Commission, sought an Attorney General's opinion on whether the fair meet tax exemption applied to revenue from simulcast wagering conducted when no fair meet is being held. Oklahoma Attorney General Opinion No. 95–101 provides that 3A O.S.Supp.1995 § 208.2 exempts from taxes only revenue from wagers conducted during fair meets and that revenue from wagers accepted for inter-track simulcast races when the fair meet is not in session is not exempt from taxation.

¶ 5 Pursuant to this Attorney General's Opinion, OTC issued the letter to TCPFA which required TCPFA to pay $60,000 in parimutuel wagering taxes plus a $6,000 penalty. TCPFA protested the tax. TCPFA and OTC stipulated to the facts. The dispute centered on statutory construction. After the hearing, OTC adopted Attorney General's Opinion No. 95–101 and upheld the tax. TCPFA argues both that the Attorney General's Opinion wrongly interprets the Oklahoma Horse Racing Act and that, as a public trust, it is always exempt from any taxation.

¶ 6 TCPFA argues that the "fair meet" statute, 3A O.S.Supp.1995 § 208.2, allows it to keep all profits from pari-mutuel wagering at any time. The statute which allows pari-mutuel wagering on off-track or simulcast races provides that proceeds from such wagering shall be distributed in the same manner as money wagered pursuant to 3A O.S.Supp.1995 § 205.6(B)(1), (D), and (E) and 3A O.S.Supp.1995 § 208.2. 3A O.S.Supp. 1995 § 205.7a. TCPFA's argument is that, because the simulcast wagering statute refers to the fair meet statute, the Legislature

---

1. Public trusts may be created to benefit a state, county or municipal government. 60 O.S.1991 § 176.

2. Operation of a pari-mutuel horse racing facility by a public trust is an authorized and proper public function under 60 O.S.1991 § 176 if conducted by a state, district or county fair association as provided by 3A O.S.1991 § 208.2. Op. Atty.Gen. No. 87–58.

3. That section defines race meetings conducted by fair associations and provides that "race meeting(s) conducted pursuant to the provisions of this section shall be conducted in such a manner that all profits shall accrue to the fair association." 3A O.S.Supp.1995 § 208.2(A).

must have intended for simulcast wagering at fair association race facilities to be tax exempt.

¶ 7   Attorney General Opinion No. 95–101 limits the tax exemption of fair associations to race meetings occurring at the fair association's race facility and to simulcast races occurring while a fair meet is operating, in other words, when live racing is taking place at the fair association's race facility. Section 208.2(A) provides:

> Any fair association organized pursuant to the provisions of Title 2 of the Oklahoma Statutes for Agricultural Fair Corporations, the Free Oklahoma State Fair, Free District Fairs, and Agricultural and Industrial Expositions and Fairs or any existing county, district, or state fair as of January 1, 1983, may apply to the Commission for one race meeting each year to be held within the boundaries of the county where the fair association is located. The Commission may set the number of days and the dates of such race meeting requested by the fair association. A race meeting conducted by a fair association shall not exceed sixteen (16) days during a twenty-eight-consecutive-day period. A race meeting *conducted pursuant to the provisions of this section* shall be conducted in such a manner that all profits shall accrue to the fair association. (Emphasis supplied).

By limiting the tax exemption to races conducted pursuant to § 208.2, the Attorney General Opinion successfully construes that section with the simulcast provision (§ 205.7a).

¶ 8   TCPFA argues the Legislature would not have mentioned § 208.2 in the simulcast statute if it had intended for fair associations to pay taxes on any wagers made at fair association facilities. However, the interpretation offered by the Attorney General Opinion more logically follows the simulcast statute, § 205.7a. Section 208.2 provides that races conducted pursuant to that section are tax-exempt. That section limits fair meet races to one race meeting each year. Simulcast racing, and wagering, however, may be conducted at fair association facilities at other times during the year. The simulcast statute provides for the distribution of the pari-mutuel pool under either circumstance: wagering at fair association facilities *during* a fair meet, which is tax-exempt, and wagering when a fair meet is not in session, which, because such races are not conducted pursuant to § 208.2, is taxable.

¶ 9   Despite   TCPFA's   arguments that statutory construction requires the opposite result, and that ambiguities must be resolved in favor of the taxpayer, the language of the statutes is clear. Further, Attorney General opinions are persuasive authority and silence by the Legislature may be interpreted as acquiescence. *The National Cowboy Hall of Fame and Western Heritage Center v. State ex rel. Oklahoma Human Rights Commission,* 579 P.2d 1276 (Okla. 1978). We find that, by limiting the tax exemption for fair associations to simulcast racing occurring while a fair meet is in session, Attorney General Opinion No. 95–101 and OTC properly interpreted the simulcast provisions, without defeating the intent of § 208.2 that profits from wagers made *during fair meets* shall accrue to the fair association.

¶ 10   We next address TCPFA's contention that as a public trust it can never be subject to taxation. TCPFA relies on *Board of County Commissioners of Oklahoma County v. Warram,* 285 P.2d 1034 (Okla. 1955). The eighth clause in the syllabus to that case states that "Trusts with one or more governmental entities as beneficiary are exempt from all forms of taxation in Oklahoma," *citing* 60 O.S.1951–1953 Supp. § 382. Title 60 O.S.1991 § 382 provides:

> No gift, ..., of any property, ..., or any interest therein, to the State of Oklahoma, or to any county, city, town, or school district ..., nor any income or profits derived by such state, county, city, town or school district from any such property or its use or disposition thereof, shall be subject to any form of tax.

That section refers to gifts to a state entity and provides that such gifts are not subject to taxation. In its order, OTC held that the "tax" in the instant case is not a tax on TCPFA or its property or revenue.

¶ 11 The amount sought to be collected by OTC in the instant case, however, arrives in the hands of TCPFA in the form of wagers on horse racing, rather than gifts.[4] Indeed, the Oklahoma Horse Racing Act indicates that, out of the pari-mutuel pool, each organization licensee shall retain an amount equal to 18% of all money wagered to be distributed before any wagering proceeds are paid to winning bettors. 3A O.S.Supp.1995 § 205.6. That statute provides for dividing the 18% and distributing it to OTC, the organization licensee, the participating horses, and the Oklahoma Horse Racing Commission. *See* 3A O.S.Supp.1995 § 205.6(B), (C), (D), and (E).[5] The statute therefore provides that the organization licensee, in this case TCPFA, receives its share of the 18% *after* OTC receives its allotment. For this reason, we agree with OTC that no income or property of the public trust was taxed in this case. Accordingly, 60 O.S.1991 § 382 has not been violated by the OTC order.

AFFIRMED.

HANSEN, P.J., and JOPLIN, J., concur.

---

**4.** The "pari-mutuel system of wagering" is defined as a form of wagering on the outcome of horse races in which those who wager purchase tickets of various denominations and all wagers for each race are pooled and held by the organization licensee for distribution. 3A O.S.1991 § 200.1(A)(10).

**5.** The amount distributed to OTC changes depending on the total amount wagered, but generally OTC receives ⅑ (one ninth) of the 18% retained from the pari-mutuel pool.