OSCN Found Document:GASKINS v. TEXON, LP

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 GASKINS v. TEXON, LP
2014 OK CIV APP 22
Case Number: 111278
Decided: 09/06/2013
Mandate Issued: 02/25/2014
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2014 OK CIV APP 22, __ P.3d __

GLENDELL GASKINS, Plaintiff/Appellant,
v.
TEXON, LP, a foreign limited partnership, Defendant/Appellee.
And
CP ENERGY, LLC, an Oklahoma limited liability company, Defendant.



APPEAL FROM THE DISTRICT COURT OF
CREEK COUNTY, OKLAHOMA

HONORABLE JOE SAM VASSAR, TRIAL JUDGE



AFFIRMED



Jessie V. Pilgrim, MOYERS, MARTIN, SANTEE & IMEL, LLP, Tulsa, Oklahoma, for Plaintiff/Appellant
Mark Banner, Heather L. Cupp, HALL, ESTILL, HARDWICK, GABLE GOLDEN & NELSON, P.C., Tulsa, Oklahoma, for Defendant/Appellee




JERRY L. GOODMAN, JUDGE:


¶1 Glendell Gaskins (Gaskins) appeals the trial court's November 19, 2012, order dismissing his declaratory judgment action against Texon, LP (Texon), after finding Gaskins failed to state a claim for which relief can be granted under the Oklahoma Production Revenue Standards Act, 52 O.S.2011, § 570.1 et seq. The appeal was assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(a)(2), 12 O.S.2011, Ch. 15, App. 1.[1] Based upon our review of the facts and applicable law, we affirm.

BACKGROUND

¶2 Gaskins sought a declaratory judgment against Texon determining that Texon was liable under the Oklahoma Production Revenue Standards Act (PRSA), 52 O.S.2011, § 570.1 et seq. Gaskins asserts § 570.10(A) creates a statutory duty for Texon to hold all revenue or proceeds from the purchase of oil and gas in trust for the benefit of the legal owners.[2]

¶3 Gaskins asserted he sold 642 barrels of oil from wells located in Creek County, Oklahoma, to SemCrude in June and July of 2008, and that this oil was injected into SemCrude's pipeline system at the Midway and Derrisaw stations where it was transported for sale in Cushing, Oklahoma.[3] Gaskins further asserted his oil was commingled in the pipeline with oil produced and purchased from other wells and eventually sold to several downstream purchasers, including Texon, who purchased 1,650 barrels of oil in June and 1,085 barrels in July, 2008. Gaskins asserted SemCrude filed bankruptcy on July 22, 2008, and that it failed to pay him approximately $62,000.00 for his oil. Gaskins contends Texon has proceeds from the sale of oil by SemCrude to Texon, which includes proceeds from the sale of his commingled oil.

¶4 Texon filed an answer, pleading, inter alia, the affirmative defense of failure to state a claim upon which relief can be granted. Gaskins filed a motion for summary judgment on September 5, 2012. On September 20, 2012, Texon's counsel filed an affidavit averring discovery was necessary before it could respond. The court granted an extension of time. Gaskins subsequently filed an application for hearing pursuant to 12 O.S.2011, § 2012(C) on Texon's affirmative defense; the court granted the application over Texon's objection.

¶5 A hearing was held on November 19, 2012, on Texon's affirmative defense. By order filed on November 19, 2012, the court held the PRSA did not apply to Gaskins' sale of oil to SemCrude and Texon's subsequent purchase of Gaskins' oil from SemCrude. The court found Gaskins failed to state a claim for which relief could be granted under the PRSA and that the defect in the second amended petition could not be remedied by amendment. The court dismissed Gaskins' petition for declaratory judgment. Gaskins' appeals.

STANDARD OF REVIEW



[] This court reviews the dismissal de novo considering the legal sufficiency of the petition and taking all allegations in the plaintiff's petition as true. The function of a motion to dismiss is to test the law of the claims, not the facts supporting them. No dismissal for failure to state a claim upon which relief may be granted should be allowed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle relief. Plaintiffs need neither identify a specific theory of recovery nor set out the correct remedy or relief to which they may be entitled. If any set of facts can be established which is consistent with the allegations, a motion to dismiss should be denied. Dismissal is appropriate only for lack of any cognizable legal theory to support the claim or for insufficient facts under a cognizable theory. Where not all claims appear to be frivolous on their face or without merit, dismissals for failure to state a claim upon which relief may be granted are premature. The movant bears the substantial burden of demonstrating any insufficiency. . . .



Gens v. Casady Sch., 2008 OK 5, ¶ 8, 177 P.3d 565, 568-69 (footnotes omitted).

¶6 Furthermore, the issue presented is one of statutory interpretation and therefore presents a question of law which is subject to de novo review. Williams v. Smith & Nephew, Inc., 2009 OK 36, ¶ 8, 212 P.3d 484, 486. An appellate court exercises plenary, independent, and non-deferential authority when reexamining legal rulings. Barnes v. Oklahoma Farm Bureau Mut. Ins. Co., 2000 OK 55, ¶ 4, 11 P.3d 162, 166.

ANALYSIS

¶7 This case involves the legal scope and effect of 52 O.S.2011, § 570.10(A) of the PRSA. Section § 570.10(A) provides:



All proceeds from the sale of production shall be regarded as separate and distinct from all other funds of any person receiving or holding the same until such time as such proceeds are paid to the owners legally entitled thereto. Any person holding revenue or proceeds from the sale of production shall hold such revenue or proceeds for the benefit of the owners legally entitled thereto. Nothing in this subsection shall create an express trust.



¶8 Gaskins contends § 570.10(A) creates a statutory duty on Texon to hold revenue or proceeds from the purchase of oil and gas in trust for the benefit of the legal owners.[4] Gaskins contends the PRSA uses language typically associated with trusts to separate equitable title to the revenue or proceeds from legal title: "any person" holding either revenue or proceeds from the sale of oil or gas "[s]hall hold such revenue or proceeds for the benefit of the owners." and "[a]ll proceeds . shall be regarded as separate and distinct from all other funds. ."

¶9 Texon disagrees with Gaskins' interpretation of § 570.10(A), asserting the PRSA regulates how interest owners and local operators (or their proxies) work together at the wellhead and serves to hold operators accountable to their interest owners. Texon maintains the PRSA does not state or even suggest that it creates any duty or applies to downstream purchasers of oil and gas after it reaches the stream of interstate commerce. Thus, because the PRSA is intended to regulate only dispositions at the well, "person" in § 570.10(A) cannot be read to apply to a downstream purchaser that does not receive the "proceeds" of the sale at the well. Finally, Texon contends nothing in the language of § 570.10(A) creates or suggests a trust. Rather, it expressly disclaims a trust and creates a debtor-creditor commercial relationship.

¶10 In the present case, we find the language of § 570.10(A) to be clear and unambiguous. Thus, the issue is whether § 570.10(A) creates a duty on a downstream purchaser such as Texon to hold revenue or proceeds in an implied trust for the benefit of the legal owner. No Oklahoma court has recognized such a duty or implied trust pursuant to § 570.10(A) of the PRSA.

¶11 Gaskins relies on a 2008 Oklahoma Attorney General opinion wherein the Attorney General opined § 570.10(A) embodies trust concepts and creates an implied trust.



The language of Section 570.10(A) clearly supports the imposition of a resulting trust by which the holder of the proceeds of production is the resulting trustee that holds those proceeds for the resulting beneficiaries; i.e., the persons legally entitled to them. However, further analysis reveals that Section 570.10(A) also imposes a constructive trust on such proceeds. The primary reason for imposing a constructive trust is to avoid unjust enrichment.

.

Additionally, not enforcing Section 570.10(A) through the imposition of a constructive trust would promote unjust enrichment. It would give the holder of the revenue or proceeds both legal and beneficial title to and use of property of others not only in violation of law, but also for which the holder had not paid. Thus, the holder of those proceeds would obtain legal and beneficial title to the property of others in violation of State law and at the actual expense of those who sold presumptively in reliance on the State law. Consequently, if Section 570.10(A) were found not to create a resulting trust, Section 570.10(A) would impose a constructive trust on the holder of such funds.
.

The Legislature intended an implied trust (whether resulting or constructive) under the provisions of Section 570.10(A) of Title 52. See Cacy v. Cacy, 619 P.2d. 200, 202 (Okla. 1980); Littlefield v. Roberts, 448 P.2d 851, 856 (Okla. 1968); Bryant v. Mahan, 264 P. 811, 812 (Okla. 1927). Furthermore, the holder of the revenue or proceeds of oil and gas production is an implied trustee who has no rights in or to such revenue or proceeds and who is under a statutory duty to pay the revenue or proceeds of oil and gas production to the implied beneficiaries; i.e., the owners legally entitled thereto. The holder of the revenue or proceeds of oil and gas production acquires no right, title or interest in such revenue or proceeds.



¶12 Attorney General opinions are persuasive authority and silence by the Legislature may be interpreted as acquiescence. Tulsa Cty. Publ. Facility Auth. v. State ex rel. O.T.C., 1998 OK CIV APP 12, ¶ 9, 955 P.2d 741, 743 (citing The National Cowboy Hall of Fame and Western Herit. Ctr. v. State ex rel. Oklahoma Human Rights Comm'n, 1978 OK 76, 579 P.2d 1276).

¶13 Upon reviewing the plain language of § 570.10(A), we agree with Texon that nothing in the language of § 570.10(A) creates or suggests a duty on a downstream purchaser or applies to downstream purchasers of oil and gas after it reaches the stream of interstate commerce. Moreover, there is nothing in that language requiring the imposition of an implied trust.[5] We find In re SemCrude, L.P. (Samson Res. Co. v. SemCrude, L.P., et al.), 407 B.R. 140 (D.Del. 2009), persuasive. After entering bankruptcy, SemCrude failed to pay producers and owners from various states for oil and gas produced between June 1, 2008, and the date of bankruptcy. Oklahoma producers filed adversary proceedings in the Delaware Bankruptcy Court to obtain declaratory judgments establishing what rights, if any, were afforded by Oklahoma law and their priority relative to other security interests.[6] More specifically, the producers asserted § 570.10(A) created an implied trust over oil and gas revenue and proceeds for the benefit of Oklahoma producers. They further asserted the Oil and Gas Owners' Lien Act of 1988 gave them priority over competing claims. See 52 O.S.2001, § 548 et seq. (repealed by Laws 2010, SB 1615, c. 142, § 13, emerg. eff. April 19, 2010).

¶14 Interpreting Oklahoma law, the bankruptcy court disagreed, concluding the PRSA does not impose an implied trust in favor of the producers, stating:



The requisite intent for creating a resulting trust under Oklahoma law must be clear, decisive, and unequivocal. Estate of Ingram, 874 P.2d [1282] at 1287. Here, the Court concludes that § 570.10(A) of the PRSA does not create a resulting trust because the intent to create one is simply not provided by the plain words of the statute.

.

Read in its entirety, the PRSA provides a comprehensive regulatory structure governing how interest owners and operators work together at the wellhead, and serves to hold operators accountable to their interest owners.

.

Because the PRSA requires operators to pay interest to owners at specified rates and otherwise has common commercial terms and conditions throughout, the Court finds that the statute concerns a debtor-creditor relationship and does not impose a trust relationship.



Id. at 153-54. The court found that unlike situations where a statute is clear that the intent is for the trustee to hold funds for the benefit of beneficiaries, the PRSA does not identify a trustee, actually require segregation of trust proceeds, or otherwise impose rights or duties typically associated with a trustee/beneficiary relationship. Id. at 152. The court concluded § 570.10(A) must be read in context with other provisions of the PRSA, which reading supports the conclusion the PRSA is a regulatory scheme for how operators and owners will interact with regard to the well. See also McKnight v. Linn Operating, Inc., 2010 WL 9039794 (W.D. Okla. Apr. 1, 2010) and Naylor Farms, Inc. v. Anadarko OGC Co., et al., 2011 WL 7267853 (W.D. Okla. June 23, 2011) agreeing with the analysis in In re SemCrude that § 570.10(A) does not create an implied trust and disagreeing with the Oklahoma Attorney General's opinion.

¶15 Moreover, the Oil and Gas Owners' Lien Act of 1988 provided a procedure for Gaskins to secure a lien on the proceeds from the sale of his oil and gas. See 52 O.S.2001, § 548 et seq. (repealed by Laws 2010, SB 1615, c. 142, § 13, emerg. eff. April 19, 2010). In In re SemCrude, the bankruptcy court held the existence of this Act further supported its conclusion that the PRSA did not create a trust.



The existence of these lien rights bears upon, and supports, the Court's earlier construction of the PRSA. The Lien Act predates enactment of the PRSA, and was not repealed upon enactment of the PRSA. The Oklahoma Producers' contention that the PRSA imposes a trust for their benefit upon production and proceeds is belied by the continued vitality of the rights afforded under the Lien Act, as it is axiomatic that a party cannot hold a lien in its own property.



In re SemCrude, L.P., 407 B.R. at 157 fn. 10.[7]

¶16 In response to the In re SemCrude, L.P. decision, the Oklahoma Legislature repealed the existing Lien Act of 1988 and enacted the Oil and Gas Owners' Lien Act of 2010 ("Lien Act"). See 52 O.S.2011, § 549.1 et seq., Cmt. 10 (The 2010 Act was "designed to remedy some of the deficiencies perceived to be present in the Prior Act as well as to address some of the issues that emerged in the SemGroup litigation.") The purpose of the statute was to give Oklahoma producers and royalty owners a first-priority lien to secure payment for their interest in oil and gas sold to a first purchaser. The new lien attaches to oil and gas before extraction and follows the oil and gas upon severance. It also attaches to the proceeds of sale. The Lien Act strengthens the rights of Oklahoma interests owners in three (3) ways: 1) Oklahoma oil and gas interests are now governed by real property law, which designates the applicable law by the state in which the wellhead is located; (2) Oklahoma interest owners can now obtain a lien that will remain attached until a first purchaser has paid in full the purchase price of produced oil; and (3) the Lien Act explicitly and unbendingly grants superior priority to Oklahoma interest owners above all other lienholders and U.C.C. Article 9 secured creditors. See There's A New Act in Town: How the Oklahoma Oil and Gas Owners' Lien Act of 2010 Strengthens the Position of Oklahoma Interest Owners, 65 Okla. L. Rev. 133 (2012). Title 52 O.S.2011, § 549.6 allows a downstream purchaser to take free of the statutory lien only under certain conditions.

¶17 We agree with the bankruptcy court that the PRSA is a regulatory scheme for how operators and owners will interact with regard to the well. In addition, § 570.10(A) specifically provides it applies only to the revenue or proceeds from the sale of production, i.e., the oil and gas and other minerals that the lessee extracts from the ground at the wellhead. Section 570.10(A) does not specifically apply to downstream purchasers. Accordingly, we reject Gaskins' assertion that the PRSA applies to Texon's subsequent purchase of oil and gas from SemCrude.

¶18 Gaskins further asserts Texon will be unjustly enriched if it is not required to pay the proceeds from the sale of his oil and gas. A review of the record on appeal reveals, however, that Gaskins did not assert an unjust enrichment claim against Texon in this case nor was this issue raised to the trial court below. Rather, Gaskins merely sought a declaratory judgment that the PRSA applies to Texon. Therefore, this assertion of error is denied.

¶19 Accordingly, the trial court properly dismissed Gaskins' declaratory judgment action against Texon for failure to state a claim for which relief can be granted under the PRSA. The court's November 19, 2012, order is therefore affirmed.


¶20 AFFIRMED.


 


THORNBRUGH, P.J., and RAPP, J., concur.



FOOTNOTES


[1] Texon's motion for leave to file appellate briefing was granted on February 6, 2013.



[2] Gaskins originally filed suit against CP Energy, LLC, on February 28, 2012. CP Energy was dismissed on August 6, 2012. An amended petition and second amended petition were filed on July 17, 2012, and August 6, 2012, respectively, adding Texon as a defendant.



[3] Gaskins' second amended petition asserted SemGroup, L.P., owned and controlled SemCrude, L.P. For purposes of simplicity, we will refer to these parties as "SemCrude" in this opinion.



[4] Gaskins maintains the PRSA is a statute of creation and that the legislature intended to create a new and comprehensive statutory scheme when it enacted Senate Bill 168 in 1992. Gaskins states the PRSA was a major legal reform for the oil and gas industry, creating fourteen new sections of law and amending one existing section, 52 O.S.1991, § 540, which did not provide for duties, responsibilities, or a standard of care but merely set time limits for oil and gas proceeds to be paid. In addition, he contends 52 O.S.2011, §§ 570.10 and 570.14 are remedial statutes that create a new liability and an action to enforce it where none previously existed in the common law and they should be accorded liberal construction to encourage development of Oklahoma's natural resources and protection of owners of produced oil and gas. Gaskins contends he retained beneficial title or interest in the proceeds and that Texon is a mere holder of the proceeds. Gaskins further cites to the legislative history of the PRSA, including major changes to the PRSA in 1992.



[5] Implied trusts are equitable remedies which arise entirely by implication of law and are either constructive or resulting trusts. See Cacy v. Cacy, 1980 OK 138, 619 P.2d 200. These trusts are used by the courts as a remedial device to restore the status quo. Id. The burden of proving the existence of an implied trust rests on the party seeking to enforce it. Matter of Burns Estate, 1978 OK CIV APP 42, ¶ 10, 585 P.2d 1126, 1129. Evidence to support imposition of an implied trust "must be clear, unequivocal and decisive beyond a reasonable doubt." Cacy, 1980 OK 138, at ¶ 5, 619 P.2d at 202.

A constructive trust is imposed when an individual obtains a legal right to property through fraudulent, abusive means, or through a method which violates equity and good conscience. Matter of Estate of Ingram, 1994 OK 51, ¶ 19, 874 P.2d 1282, 1287. "The primary reason for imposing a constructive trust is to avoid unjust enrichment." Robison v. Graham, 1990 OK 93, ¶ 19, 799 P.2d 610, 616 (citing Cacy, 1980 OK 138, at ¶ 7, 619 P.2d at 202; Easterling v. Ferris, 1982 OK 99, ¶ 10, 651 P.2d 677, 680). There must be some active wrongdoing on the part of the person against whom recovery is sought. Robison, 1990 OK 93, at ¶ 18, 799 P.2d at 616. Conversely, a resulting trust may be judicially imposed where the circumstances indicate that the grantor of legal title to property did not intend for the beneficial interest to be enjoyed by the grantee of the legal title. See Wootton, 1981 OK CIV APP 24, 631 P.2d 1337.



[6] The parties in the present case did not participate in the bankruptcy proceedings.



[7] "The 1988 Act was intended to guarantee Oklahoma interest owners a right to payment for oil produced and sold to a first purchaser. However, two major weaknesses in the language of the 1988 Act subordinated the position of Oklahoma interest owners, especially when facing U.C.C. Article 9 secured creditors claiming a security interest in the same oil. First, the 1988 Act expressly carved out an exception for U.C.C. Article 9 secured creditors. As a result, interest owners lost their claims over produced oil to secured creditors who asserted their security interests in the same oil. Second, the 1988 Act designated real property as the choice of law, thus making the debtor's state of incorporation the governing law, rather than the state where the wellhead is located." See There's A New Act in Town: How the Oklahoma Oil and Gas Owners' Lien Act of 2010 Strengthens the Position of Oklahoma Interest Owners, 65 Okla. L. Rev. 133 (2012)(footnotes omitted).










 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases Cite
Name
Level 1978 OK CIV APP 42, 585 P.2d 1126, MATTER OF ESTATE OF BURNS
Discussed 1981 OK CIV APP 24, 631 P.2d 1337, Wootton v. Melton
Discussed 1998 OK CIV APP 12, 955 P.2d 741, 69 OBJ 1323, FACILITIES AUTHORITY v. OKLAHOMA TAX COMMISSION
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1990 OK 93, 799 P.2d 610, 61 OBJ 2510, Robison v. Graham
Discussed at Length 1994 OK 51, 874 P.2d 1282, 65 OBJ 1713, In the Matter of the Estate of Ingram
Discussed 1968 OK 180, 448 P.2d 851, LITTLEFIELD v. ROBERTS
Cited 2008 OK 5, 177 P.3d 565, GENS v. CASADY SCHOOL
Discussed 2009 OK 36, 212 P.3d 484, WILLIAMS v. SMITH & NEPHEW, INC.
Discussed 1978 OK 76, 579 P.2d 1276, NATIONAL COWBOY HALL OF FAME v. STATE ex rel. OKLA. HUMAN RIGHTS COMM.
Discussed 1980 OK 138, 619 P.2d 200, Cacy v. Cacy
Discussed at Length 1927 OK 486, 264 P. 811, 130 Okla. 67, BRYANT v. MAHAN
Cited 1982 OK 99, 651 P.2d 677, Easterling v. Ferris
Discussed 2000 OK 55, 11 P.3d 162, 71 OBJ 3219, BARNES v. OKLAHOMA FARM BUREAU MUTUAL INS. CO.
Discussed
Title 12. Civil Procedure Cite
Name
Level 12 O.S. 2012, Defenses and Objections - When and How Presented - By Pleading or Motion
Cited
Title 52. Oil and Gas Cite
Name
Level 52 O.S. 549.1, Short Title
Cited 52 O.S. 549.6, Rights of Purchasers
Cited 52 O.S. 540, Renumbered as 52 O.S. § 570.10 by Laws 1992, SB 168, c. 190, § 28
Cited 52 O.S. 548, Oil and Gas Owners' Lien Act
Discussed 52 O.S. 570.1, Short Title
Discussed 52 O.S. 570.10, Proceeds from Sale of Production
Discussed